# Richmond

### PHILIP W. PEPOON v. COMMONWEALTH OF VIRGINIA.

October 8, 1951.

Record No. 3894.

Present, Hudgins, C. J., and Eggleston, Spratley, Buchanan, Smith and Whittle, JJ.

The opinion states the case.

*Gorin F. Hatchett,* for the plaintiff in error.

*J. Lindsay Almond, Jr., Attorney General,* and *Thomas M. Miller, Assistant Attorney General,* for the Commonwealth.

SMITH, J., delivered the opinion of the court.

The question of proof of the *corpus delicti* is the crux of this case arising out of the alleged commission of the crime of sodomy *per os* by the accused, Philip W. Pepoon, on the person of Timothy Brown, a three-year-old boy. The court heard the evidence, without the intervention of a jury, found the accused

guilty as charged, and sentenced him to eighteen months in the penitentiary.

The Commonwealth called four witnesses—Marie T. Brown and Joseph E. Brown, parents of the victim, Police Captain D. M. Franklin, the officer who examined the accused, and Charles F. Barnette, security officer of the National Advisory Committee on Aeronautics. The accused did not take the witness stand and the only evidence introduced in his behalf was that of five witnesses who testified as to his general reputation for good character.

Pepoon for a number of years resided in the downstairs apartment of a two-family dwelling in a sub-division known as Sussex-Hampton located in Elizabeth City county, Virginia. At the time of his arrest he was an aeronautical engineer employed by the National Advisory Committee on Aeronautics, Langley Air Force Base, Virginia, and had worked there for over a decade.

Joseph E. Brown, his wife, Marie T. Brown, their three-year-old son, Timothy Brown, and a younger child, lived in an up-stairs apartment next door to Pepoon with whom the Browns were friendly but not intimate. On June 10, 1950, the mother was bathing Timothy about six o'clock in the evening. Her testimony, admitted over the objection of the accused, is as follows:

"Well, as I was washing him, I did wash between his legs, and I touched his penis. He asked me, 'Did you touch my wee-wee?' I said, 'No.' I said, 'Why?' I began to think then, not even thinking of someone else, but just wondering why he should happen to mention it, because he had been bathed all along by me, and there would be no reason for him to mention it. So I asked him why. I said, 'Did someone else?' He said, 'Yes; Phil [the accused] did.' So I said, 'Phil?' He said 'Yes, over there'—and he pointed in the direction of his house. I said, 'What did he do?' He said, 'He took my wee-wee and put it in his mouth.' So I just kept talking, because I did not want it to become a point with him, for him to remember. So I said, 'What were you doing in Phil's house?' He said, 'He asked me to come in and look at his airplanes.' He said, 'He has an airport in there'."

The mother was asked on direct examination if she had noticed any marks or bruises on the child's body and she an-

swered that she had not. She further testified that the child had not complained of any pain or soreness.

After she had finished bathing Timothy, Mrs. Brown immediately called her husband in, he having heard the conversation between the mother and the child. They thereupon went to the accused's apartment and informed him that their son had related a nasty story and that if the child ever came to the Pepoon apartment or it ever happened again, they would report him to the police. As the Browns were leaving Pepoon's apartment the latter said that he was very sorry, but it had not happened that day and it would not happen again.

The parents promptly contacted Police Captain D. M. Franklin, who swore out the warrant on June 10, 1950, and arrest was made the next day charging accused with the crime of sodomy *per os* on the child, Timothy Brown. The indictment charged the offense occurred on the — day of June, 1950. On motion of the accused the Commonwealth filed a bill of particulars as follows:

"1. The Statement of *Phillip* W. Pepoon that the alleged crime did happen within a period of time prior to the complaint by the victim, Timothy Brown, which time the said defendant did not make certain, but the facts, as stated by the defendant, placed the alleged act in the month of June. 2. The statement of the defendant when presented the accusation by Police Captain D. M. Franklin on June 11, 1950, replied to such accusation that it happened over a week ago; so, therefore, the alleged time was in the month of June."

It will be seen that the time of the alleged offense is based on the confession of the accused. The Attorney General in his brief describes the statement of the child as occurring "some week or ten days later".

C. F. Barnette, security officer with the National Advisory Committee on Aeronautics, testified that he and Melvin Butler, personnel officer, talked with the accused on Monday, June 12, 1950, concerning the charge. Barnette testified that Pepoon then admitted, "having his mouth on this little kid's penis" and said, "this was the first time it had happened for a number of years". Barnette further testified that it was his impression from his conversation with the accused that the crime happened on the week-end after May 30, 1950.

Pepoon contends that the testimony of Marie T. Brown, re-

lating the statements that Timothy had made to her, was inadmissible and should have been rejected, that the only competent evidence against him is his uncorroborated admissions and confessions and that they standing alone are not sufficient to establish the *corpus delicti* of the crime charged.

The earliest formulation of the rule of evidence. which requires proof of the *corpus delicti* has been frequently attributed to Lord Hale, see 7 Wigmore, Evidence (3d ed. 1940) § 2081; 2 Hale, Historia Placitorum Coronae (1736) 290, but the policy underlying it seems to have been recognized at least as early as Sir Edward Coke. See Coke, III Institutes, c. 104, p. 232.

In *Wheeler* v. *Commonwealth, ante,* p. 665, 66 S. E. (2d) 605, we said, "It has long been settled in this State that the *corpus delicti* cannot be established by the extrajudicial confession of an accused uncorroborated by other evidence." See *Cleek* v. *Commonwealth,* 165 Va. 697, 181 S. E. 359, and cases there cited.

Since the Commonwealth relies on the testimony of Mrs. Brown to corroborate the confessions and thus establish the *corpus delicti,* we must necessarily determine whether the court below correctly overruled the objection to the admission of her testimony in evidence. The Attorney General contends that the statements of the child made to the mother are admissible on three grounds: First, that they constitute a part of the *res gestae;* second that they constitute recent complaints of the victim; and third, that they are expressions of bodily feeling. We shall treat these points in the same order.

Declarations admitted as *res gestae* constitute original evidence and are not only admitted as corroboration of a witness, but on the theory that they are verifiable accounts connected with the transaction. Where declarations of the injured party are relied upon as a part of the *res gestae,* it is essential that they must have been made recently after the injury, and before sufficient time has elapsed for the fabrication of a story. See *Chappell* v. *White,* 182 Va. 625, 29 S. E. (2d) 858; *McCann* v. *Commonwealth,* 174 Va. 429, 4 S. E. (2d) 768; *Ellis* v. *Virginia Ry., etc., Co.,* 132 Va. 24, 110 S. E. 382; *Washington-Virginia Ry. Co.* v. *Deahl,* 126 Va. 141, 100 S. E. 840; *Andrews* v. *Commonwealth,* 100 Va. 801, 40 S. E. 935; *Kirby* v. *Commonwealth,* 77 Va. 681, 46 Am. Rep. 747.

In the *Chappell Case* dealing with *res gestae* we quoted with approval the following statement:

"'* * * the statement or declaration concerning which testimony is offered must, in order to make such evidence admissible, possess at least the following essential elements:. (1) The statement or declaration made must relate to the main event and must explain, elucidate, or in some way characterize that event; (2) it must be a natural declaration or statement growing out of the event,.and not a mere narrative of a past, completed affair; (3) it must be a statement of fact and not the mere expression of an opinion; (4) it must be a spontaneous or instinctive utterance of thought, dominated or evoked by the transaction or occurrence itself, and not the product of premeditation, reflection, or design; (5) while the declaration or statement need not be coincident or contemporaneous with the occurrence of the event, it must be made at such time and under such circumstances as will exclude the presumption that it is the result of deliberation, and (6) it must appear that the declaration or statement was made by one who either participated in the transaction or witnessed the act or fact concerning which the declaration or statement was made.''

In *McCann* v. *Commonwealth, supra,* quoting from *Kirby* v. *Commonwealth, supra,* this was said, ''In cases like the present it is essential to the admissibility of the declarations of the injured party as part of the *res gestae* that they be made recently after the injury, and before sufficient time has elapsed for the fabrication of a story. If made after such time has elapsed, and after the *lis mota* may be supposed to exist, they are not part of the *res gestae,* but are merely narrative of a past occurrence or heresay, and are not admissible as evidence.''

The Commonwealth is unable to fix the exact time of the offense, but relies on the time fixed in the accused's admissions and confessions as ''some week or ten days'' before the child made his recital to his mother.

In the case at bar the statement or declaration of the child was not a natural declaration or statement growing out of the event, but was a mere narrative of a past, completed affair; it was not a spontaneous or instinctive utterance of thought, dominated or evoked by the transaction or occurrence itself. In fact the declaration was evoked by the fact that the mother touched the child in his genitals. The statement was not made at such time and under such circumstances as would exclude the presumption that it was the result of deliberation, but could well

have been the result of the fanciful imagination of a three-year-old child. Therefore, the statement of the child was inadmissible as a part of the *res gestae*.

The Attorney General suggests that the testimony of the mother was also admissible as a recent complaint by the victim of an alleged crime. He concedes that the details are not admissible, but contends that the fact that a complaint was made is admissible and cites *Cross* v. *Commonwealth, ante,* p. 249, 64 S. E. (2d) 727.. See also *Hubbard* v. *Commonwealth,* 174 Va. 493, 6 S. E. (2d) 760; *Locke* v. *Commonwealth,* 149 Va. 447, 141 S. E. 118; *Haynes* v. *Commonwealth,* 28 Gratt. (69 Va.) 942; *Brogy* v. *Commonwealth,* 10 Gratt. (51 Va.) 722.

In criminal trials for rape and assault with intent to ravish, the courts are unanimous in holding that it may be shown by the testimony of the prosecuting witness, or that of other witnesses, that the prosecutrix made complaint of the outrage soon after its commission, for the purpose of corroborating her testimony, but not as independent evidence of the offense charged. 44 Am. Jur., Rape, § 82.

The rule in Virginia regarding the admissibility of a recent complaint is stated in *Haynes* v. *Commonwealth, supra.* There the court rejected evidence of a recent complaint of the victim in a larceny case, holding that this exception to the general rule applies only to rape, and said (p. 947):

"We have carefully examined all the authorities referred to by the learned counsel to sustain this position, and it is manifest that the only exception (established by well-considered cases and reliable text-writers) to the general rule excluding the statements or declarations of parties as hearsay evidence, as a complaint is the exception in cases of rape. For peculiar reasons, the complaint of the victim of this diabolical outrage and crime is received as evidence. Such a victim must *at once* make complaint, or she will be suspected of consent. The instincts of human nature, revolting at this unnatural and heinous crime, compels the victim to cry out and denounce its foul perpetrator; and such complaint, made under the smart and indignation of such a cruel injury, has been received by the courts as evidence. But even in such cases the evidence is confined to the new complaint, and no detailed statement of the transaction is permitted to go in evidence. See 3 Starkie (Metcalf's ed.) 1266, and cases there cited; *Regina* v. *Osborne,* 41 Eng. C. L. R. 338.

"This is a well recognized exception to the general rule, excluding the declarations of the party injured, which are not admissible as part of the *res gestae*. Such statement in the form of complaint is admissible, though not a part of the *res gestae*. But we think the exception must be confined to cases of rape for the peculiar reasons above stated. It does not apply to any other case, unless the statement or declaration comes within the *res gestae.* * * *

"We are not disposed to extend this exception to the rule of evidence further than to cases of rape, and only to recognize this exception as one growing out of the peculiar reasons already adverted to."

Even if the rule admitting evidence of a recent complaint in rape cases were extended to all sex offenses, including sodomy, and we find no reason or logic in the decided cases to extend this rule, it must first be established that the testimony which is sought to be introduced as a complaint was in fact a recent complaint and conforms to the rules of evidence controlling the admission of such testimony.

In the instant case, however, the evidence which is sought to be admitted is a statement made a week or ten days after the alleged attack. We cannot accept this narrative statement as a recent complaint. To do so would be to permit the mother to testify to utterances of her three-year-old child without the safeguards established by law to give sanctity to this exception to the hearsay rule.

Nor can the entire testimony of the mother be admissible as an expression of bodily feeling. Such representations are admitted from necessity, and as being in the nature of *pars res gestae*. This exception to the hearsay rule is permissible only when made at the time of the commission of the act in question, (*Livingston* v. *Commonwealth*, 14 Gratt. (55 Va.) 592) and only when not in the nature of a narration of past occurrences, (*O'Boyle* v. *Commonwealth*, 100 Va. 785, 40 S. E. 121; 7 M. J., Evidence, § 264) neither of which conditions is present in the instant case.

In the case before us the mother testified that the child was not injured in any way and that there were no marks or bruises on his body. Eliminating the statement of the three-year-old child to his mother, the case of the Commonwealth rests solely on the extrajudicial confessions, is without corroboration

by any other evidence, and the entire case of the Commonwealth crumbles.

Our refusal to admit the mother's testimony relating the child's statements may mean that a conviction cannot be secured. But basic concepts of our criminal jurisprudence cannot be treated lightly in a zealous, and albeit a commendable, desire to reduce crime and convict culprits. Among these safeguards is the requirement that the State must establish the existence of the *corpus delicti* and prove its case beyond a reasonable doubt by admissible evidence.

For the reasons stated herein, the judgment of conviction must be reversed and the case remanded for a new trial, if the Commonwealth be so advised.

*Reversed.*