## Richmond

RAYMOND EUGENE FARISH

v.

COMMONWEALTH OF VIRGINIA

No. 0112-84

Decided August 5, 1986

Counsel

Harold A. Black (Harris & Black, on brief), for appellant.

Lucy H. Allen, Assistant Attorney General (William G. Broaddus, Attorney General, on brief), for appellee.

Opinion

**DUFF, J.** —After trial by jury, Raymond Eugene Farish was convicted of rape and forcible sodomy. He appeals from the trial court's denial of his motion for a subpoena *duces tecum* to produce the victim's psychiatric records and from the denial of his request for a jury instruction stating that the victim was required to reasonably resist her assailant.

At approximately 7:15 p.m. on July 6, 1984, the victim was jogging on the Blackwater Creek Nature Trail when she was approached by Farish and another man riding a moped. She testified that Farish made several sexual suggestions, including his desire to have intercourse with her. She asked him to leave her alone and allow her to continue jogging. Farish then rode away, leaving her on the trail.

The victim continued jogging until she came upon Farish, parked across the trail on his moped. She tried to run past him, but he grabbed her and tried to kiss her. They struggled and fell to the ground. The victim testified that when she realized that Farish was going to try to rape her, she suggested that they move off the trail, hoping that she would have an opportunity to break free and run. She was able to break free for a moment, but Farish grabbed her before she got away and dragged her into the bushes.

The victim tried to discourage Farish by telling him that she had cancer and that she was expecting her husband to meet her. Once they were off the path in the bushes, Farish told her to take her pants off. He then pulled out a knife and told her that she "better do it right." The victim testified that she cooperated with Farish because she was afraid that he was going to hurt her. Farish had intercourse with her and forced her to perform sodomy on him.

At the time of his arrest, Farish was advised of his rights, and he then made a statement to the police. In the statement, Farish admitted that the victim did not consent to having intercourse with him or to performing sodomy on him. He also stated that she screamed once and that he put his hand over her mouth.

I.

Prior to trial, Farish sought a subpoena *duces tecum*, directed to the victim, to produce records "of any psychiatrist or psychologist which she has visited for treatment and/or other services within the last five (5) years." The Commonwealth opposed the issuance of the subpoena on the ground that the victim's psychiatric records were neither relevant nor material to the criminal charges pending against Farish. Farish argued that the records were relevant and material to his consent defense to show the victim's mental state at the time of the offense. We disagree and affirm the trial court's denial of Farish's request.

The victim had argued with her husband before going out to jog. Farish theorized that because of the argument, she was in an agitated state at the time of the offense. He hoped that her psychiatric records would show that she had fantasies of being raped, thereby creating the inference that she consented to the sexual activity to punish her husband for arguing with her. The only evidence in support of Farish's contention that the victim consented was that she offered little, if any, resistance to the attack.

In denying Farish's motion, the court found that Farish's theory of consent was based on nothing more than surmise and speculation. We agree. To require the victim to produce her psychiatric records where there was no showing that they were material to Farish's defense and no evidence that she may have experienced rape fantasies was too great an invasion of her privacy to be warranted.

No evidence indicated that the victim fabricated the assault, nor was her testimony inherently incredible. In fact, her account of what occurred was corroborated by Farish's statement to the police and by his testimony at trial. Because there was no showing that her psychiatric records were relevant, Farish's right to call for evidence in his favor was outweighed by the public policy against allowing him to bring out potentially embarrassing and unrelated details of the victim's personal life.

■ Under Rule 3A:12(b), a subpoena for the production of documentary evidence "may be issued on affidavit that such writing or other object is material to the proceedings." When the evidence sought is material or if a substantial basis for claiming materiality exists, it is reasonable to issue the subpoena requiring the production of the evidence. *Cf. United States* v. *Agurs*, 427 U.S. 97, 106 (1976). A subpoena *duces tecum* should not be used when it is not intended to produce evidentiary materials but is intended as a "fishing expedition" in the hope of uncovering information material to the defendant's case. *Bowman Dairy Co.* v. *United States*, 341 U.S. 214, 221 (1951).

Farish represented to the court that the information he sought *might* be material to his defense. The only evidence in support of his consent defense was the degree of resistance to the attack. Farish only surmised the possibility that she had fantasies about being raped. There was no evidence whatsoever that she did anything to prompt Farish's advances or that she experienced fantasies of being raped. Farish failed to demonstrate any connection between the victim's psychiatric care and the assault.

In his statement to the police, Farish stated that the victim did not consent to sexual intercourse or sodomy. He stated that she asked him to leave her alone and allow her to continue running. When she started to step away from him, he grabbed her to prevent her from leaving. Farish had to drag her into the bushes. He covered her mouth when she screamed. He admitted that he had a knife and that he removed it from its sheath during the assault. Farish's statements to the police negated any possibility of presenting a successful consent defense at trial. He failed to show that the victim's psychiatric records would in any way demonstrate that she in fact consented to his advances. The trial court did not err in refusing Farish access to the victim's psychiatric records on the ground that Farish failed to demonstrate that the

records were material to his defense.

## II.

At trial, Farish offered the following jury instruction:

The court instructs the jury that the element of force, threat or intimidation required must be sufficient to overcome any unwillingness on the part of [the victim] to have sexual intercourse. *There must be a show of force, threat or intimidation sufficient to overcome resistance. She must resist by every means within her power under all the circumstances then existing. However, she is not required to resist if she reasonably believes that the resistance would be useless and would result in serious bodily injury to her.*

You may consider the time, place, and the relative physical size and strength of [the victim] and Raymond Farish, the whole situation as it confronted her and all the circumstances disclosed by the evidence.

(emphasis added).

The court refused to give this instruction on the ground that it is contrary to the law. We agree.

Code § 18.2-67.6 states:

The Commonwealth need not demonstrate that the complaining witness cried out or physically resisted the accused in order to convict the accused of an offense under this article, but the absence of such resistance may be considered when relevant to show that the act alleged was not against the will of the complaining witness.

■ The enactment of this code section in 1981 eliminated the reasonable resistance requirement that previously existed under Virginia law. Under Code § 18.2-67.6, the victim is not required to cry out or physically resist. The victim also does not have to reasonably believe resistance would be useless. However, if Farish's proffered instruction had been granted, the jury would have been required to find that the victim offered as much resistance as she could under the circumstances or that she offered no resis-

tance because she reasonably believed resistance would have been useless.

Farish further argues that because his proffered instruction was denied, the burden shifted to him to show that the sexual act was not against the will of the victim. In accordance with Code § 18.2-67.6, the jury was instructed that "the absence of such resistance may be considered to show that the act alleged was not against her will." It was this language, he contends, that led the jury to believe that he was required to show proof that the assault was against the victim's will. The Commonwealth argues that the statute does not shift the burden of proof to the defendant, but merely eliminates the requirement that the Commonwealth must prove that the victim actually resisted the attack. We agree. The Commonwealth still must prove that the assault was against the victim's will. The statute merely allows the defendant to use lack of resistance to buttress his consent defense.

The jury was properly instructed that the Commonwealth had the burden to prove beyond a reasonable doubt that the defendant had sexual intercourse with the victim against her will through the use of force, threat, or intimidation. Since no physical resistance is required by law, the court was not required to instruct the jury that "there must be a show of force, threat or intimidation sufficient to overcome resistance."

For the foregoing reasons, the judgment of the conviction is

*Affirmed.*

Benton, J., and Cole, J., concurred.