## Alexandria

PAUL JAMES KAUFFMANN, JR.

v.

COMMONWEALTH OF VIRGINIA

No. 0121-87-4

Decided July 11, 1989

COUNSEL

John E. Kilcarr and Harvey Volzer, for appellant.

Richard A. Conway, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief) for appellee.

OPINION

MOON, J.—Paul James Kauffmann, Jr., seeks reversal of his conviction for the aggravated sexual battery of his fourteen year-old daughter. His principal claims are (1) that his confessions were not admissible because they were involuntarily given and because they were obtained in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966); and (2) that out-of-court statements made by his deceased daughter, and which suggested that Kauffmann had molested her, were improperly admitted into evidence.

Although we find that Kauffmann's confessions were voluntary and were not obtained in violation of *Miranda*, we reverse the conviction and remand because we find that the statements made by the daughter were inadmissible hearsay. On other issues concerning jury instructions, we uphold the trial judge's rulings that contributing to the delinquency of a minor is not a lesser included offense of aggravated sexual battery and that the facts of this case did not support the giving of an instruction for the lesser included offense of sexual battery.

On April 1, 1986, Kristi Kauffmann, age 14, threw herself in front of a train in Manassas and was killed. Many of her fellow students at Osborn Park High School witnessed the incident.

Detective John Urban, who investigated the incident, interviewed Candy Machalske, one of the students who saw the suicide, at the scene. Machalske said that Kristi had joked about committing suicide earlier in the day and had said, immediately before she jumped in front of the train, "it's my parents. I can't handle it. My dad molests me in the morning before school."

Detective Urban then went to the Kauffmann house and asked the Kauffmanns if he could go through Kristi's belongings. He told them that it was routine for the police to view a suicide victim's belongings, but he did not tell the Kauffmanns about Candy Machalske's statement. At trial, Urban testified that he was searching for anything that might incriminate Kauffmann and that he was afraid the Kauffmanns would not allow him to search if he told them about Machalske's statement.

During Urban's search of Kristi's room, he found a spiral notebook. Urban found one entry, dated March 10, 1986, in which Kristi had written that her father was an "incestive molesting jerk." Urban did not show Kauffmann the notebook, but he asked Kauffmann to follow him to the police station for further questioning.

At the station, Urban confronted Kauffmann with Machalske's statement. Kauffmann expressed concern whether anything he said would be used against him or told to his wife. Urban told him that his wife would not be told and that he would not be arrested. The father then told Urban that he had fondled his daughter. No *Miranda* warnings were given at that first interview.

Two days later, on April 3, 1986, the Kauffmanns went to the police station for a meeting with a social worker who was scheduled to help the Kauffmanns deal with Kristi's death. Kauffmann was called into a room with Detective Urban and Jean Amos, a social worker. Urban and Amos both testified that Kauffmann was palpably upset, disturbed, and grieving. The daughter's funeral was scheduled for the next morning.

Detective Urban again questioned Kauffmann about the fondling incidents. Urban again told him that his wife would not be told about his statements, but Urban did read the *Miranda* warnings to him. Kauffmann repeated his statement of April 1, concerning the fondling of his daughter.

The father was indicted for aggravated sexual battery of his daughter. The trial court admitted both Candy Machalske's testimony about what Kristi said before she jumped in front of the train and the spiral notebook diary. Both statements were admitted under the state-of-mind exception to the hearsay rule. The defendant objected to the evidence as inadmissible hearsay. The court relied upon *Church v. Commonwealth*, 230 Va. 208, 335 S.E.2d 823 (1985), in holding that the statements showed Kristi's state of mind at the time the statements were made and were circumstantial evidence tending to corroborate that the father molested her.

In addition, the court allowed testimony by Bridgette Maloney that during the week of January 10, 1986, she and Kristi Kauffmann discussed the movie *Fatal Vision* while riding the school bus. Maloney testified that she asked Kristi, "[w]ell, wouldn't it be awful if your father had gone in and killed your mother and you and your family?" and Kristi replied, "[m]y father molests me." Michaelle Kalua, another Osborn Park student, was allowed to testify that two weeks before her death, Kristi Kauffmann told a joke about sexual contact between a parent and a child and then said ". . . my dad does that, too."

The court also admitted the defendant's statement to the police officer on April 1 and 3, 1986.

## The Confessions

■ In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court held that when the police ask questions of a suspect in custody without administering the prescribed warnings, the answers to the questions must be presumed compelled and the answers must be excluded at trial. Since the police did not give Kauffmann the warnings before he made his first statement, Kauffmann claims that the first statement should have been excluded at trial under *Miranda*. However, *Miranda* does not apply to the initial questioning of Kauffmann because he was not then in custody. Kauffmann had followed Detective Urban to the police station in his own car. At the station, Urban told Kauffmann that he did not have to answer any questions. He was told that he was free to leave and that he was not under arrest. In fact, he was not under restraint and he left after the interview. The *Miranda* warnings

are not required merely because the interview takes place at a police station or because the investigation has centered on the person being questioned. *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977).

The police did give Kauffmann the *Miranda* warnings before he made his second statement, which was clearly admissible. Therefore, even if the first statement had been obtained in violation of *Miranda*, its admission would have been harmless error under the analysis in *Oregon v. Elstad*, 470 U.S. 298 (1985). In *Elstad*, the suspect in a burglary case was arrested at his home and questioned in a non-coercive manner by the police at the house. The police did not give the suspect *Miranda* warnings, but the suspect admitted participating in the burglary. Later, the police took him to the police station, gave him his *Miranda* warnings, and asked him to read and sign a confession.

Nevertheless, the confession, even if obtained in full compliance with *Miranda*, may be inadmissible if it was not voluntary. In order to assess the voluntariness of a confession, an appellate court must conduct an independent review of the circumstances surrounding the confession. *Miller v. Fenton*, 474 U.S. 104 (1985). In conducting its review, the court "must determine whether, in light of the totality of the circumstances, including not only the details of the interrogation, but also the characteristics of the accused, the statement was the product of an essentially free and unconstrained choice by its maker, or whether the maker's will was overcome and his capacity for self-determination critically impaired." *Goodwin v. Commonwealth*, 3 Va. App. 249, 253, 349 S.E.2d 161, 163-64 (1986) (citations omitted).

The basis for Kauffmann's claim that his confession was not voluntary is that he "was under severe psychological strain during this time due to his daughter's death." The detective observed that Kauffmann was visibly upset and disturbed, and Jean Amos, the social worker who was present at the second interview, described Kauffmann as grieving and upset. Mrs. Kauffmann stated that her husband was in an awful condition. Lawrence Tracy, a long-time friend of Kauffmann, testified that Kauffmann was "hysterical" from April 1 through April 5 due to the loss of his daughter, and that Kauffmann did not seem to understand what Tracy was saying to him during their conversations at that time.

■ In conducting the independent review of voluntariness, this court may be aided by the subsidiary findings of facts made by the trial judge. *Goodwin*, 3 Va. App. at 237, 349 S.E.2d at 166. The trial court found that Kauffmann's statements were voluntarily given. The court did not believe that "the statements made by the officer or the investigator overbore the will of the accused nor attended the voluntariness of the statement to be made." It is important to note that the United States Supreme Court has held that "the Fifth Amendment privilege is not concerned with 'moral and psychological pressures to confess emanating from sources other than official coercion.'" *Colorado v. Connelly*, 479 U.S. 157 (1986). Since there was no coercion by the state in this case, Kauffmann's confession was not involuntary so as to constitute a Fifth Amendment violation. We agree with the trial judge's findings that both confessions were voluntary.

### The Hearsay Evidence

If admitted to prove the truth of their content, the statements made at trial by Candy Machalske, Bridgette Maloney, and Michaelle Kalua were hearsay because they reported out-of-court statements. However, if the statements were admitted for a purpose other than proving the proposition that Kristi Kauffmann was molested, the statements were not hearsay. *See Donahue v. Commonwealth*, 225 Va. 145, 151-52, 300 S.E.2d 768, 771 (1983). The trial court admitted the statements under the state-of-mind exception to the hearsay rule because the statements showed Kristi's state of mind when she made the statements.

■ It has long been settled in Virginia that the complaints of children claiming that they were sexually abused are not admissible under the state-of-mind exception to the hearsay rule. For instance, in *Pepoon v. Commonwealth*, 192 Va. 804, 811, 66 S.E.2d 854, 858 (1951), the Supreme Court held that the testimony of the mother of a young child who had complained to her of molestation was not admissible because the child's statements were not made at the time of the molestation and because the complaints recalled past events. The *Pepoon* court relied on *O'Boyle v. Commonwealth*, 100 Va. 785, 40 S.E. 121 (1901), a murder case, in which the Supreme Court prohibited the admission of hearsay statements of the decedent concerning her mental and physical condition. The basis of the rule in *O'Boyle* was Greenleaf's trea-

tise on evidence, which stated:

> Wherever the bodily or mental feelings of an individual are material to be proved, the usual expressions of such feelings, made at the time in question, are also original evidence. If they were the natural language of the affection, whether of body or mind, they furnish satisfactory evidence, and often the only proof of its existence. And whether they were real or feigned is for the jury to determine. . . . The rule admits, however, only exclamations of present pain, or statements of present symptoms. All statements made by the sick person relating to past transactions, however closely they may be connected with the present sickness or injury, should be rejected even if made to a physician for treatment, unless the statements are otherwise admissible, as part of the *res gestae*.

100 Va. at 797, 40 S.E. at 125. Further, statements describing or narrating the cause of the declarant's mental or physical condition are not admissible under the state-of-mind exception. *Insurance Co. v. Mosley*, 75 U.S. (8 Wall.) 397, 405 (1869).

In this case, the statements made by Kristi to her friends and her entries in the spiral notebook both recalled past events and described the cause of her emotional distress. There was no showing, nor, do we believe, could there be, why Kristi's state of mind was relevant to any issue in this case. Thus, the hearsay statements were improperly admitted under the state-of-mind exception to the hearsay rule.

■ Additionally, this hearsay evidence is not admissible as the recent complaint of a rape victim. Although the Virginia Supreme Court has held since *Haynes v. Commonwealth*, 69 Va. (28 Gratt.) 942 (1877), that the recent complaint of a rape victim is admissible for the purpose of corroborating her testimony, the Court has not extended the "recent complaint" rule to crimes other than rape and attempted rape. *See Cartera v. Commonwealth*, 219 Va. 516, 248 S.E.2d 784 (1978) (rule does not apply to sodomy charges); *Moore v. Commonwealth*, 222 Va. 72, 278 S.E.2d 822 (1981) (rule is unique to rape cases); *Leybourne v. Commonwealth*, 222 Va. 374, 282 S.E.2d 812 (1981) (rule does not apply to charges of taking indecent liberties with children). Since Kauffmann was accused of aggravated sexual battery in this

case, Kristi's complaints may not be admitted against him.

Therefore, the court is constrained by precedent to find that the hearsay statements of Kristi Kauffmann were improperly admitted at trial. Because of the palpably prejudicial content of the statements, we cannot say that their admission was harmless error; therefore, we must reverse the conviction.

## The Railroad Records

Before trial, Kauffmann sought discovery of the Norfolk Southern Corporation's records concerning the death of Kristi Kauffmann. Norfolk Southern had conducted an investigation of the incident because Kauffmann was hit by one of Norfolk Southern's trains. Norfolk Southern refused to disclose voluntarily its records to Kauffmann because of the railroad's fear of a civil suit by Kauffmann and his wife. On motion of Kauffmann's counsel, the trial court issued a *subpoena duces tecum* to the railroad. The railroad then filed a motion to quash the subpoena because the railroad's records of how Kristi Kauffmann was killed were not material to the proof of whether Kauffmann molested the daughter. The trial court quashed the subpoena, and Kauffmann appeals that order.

Kauffmann did not make a colorable showing that the railroad investigation of Kristi's death was material to his defense for aggravated sexual battery. Such a showing is required by Rule 3A:12(b). In support of the request to subpoena the railroad report, defense counsel said "there may be something out of those records that would be [admissible at trial]. I think I have a right to peruse the records and see what may or may not be admissible." This statement indicates that the defense merely sought to go on a "fishing expedition" of the kind strictly forbidden by *Farish v. Commonwealth*, 2 Va. App. 627, 346 S.E.2d 736 (1986).

## The Jury Instructions

Kauffmann also asserts that the trial judge erred in refusing to give an instruction on lesser included offenses for contributing to the delinquency of a minor, Code § 18.2-371, taking indecent liberties with a child, Code § 18.2-370.1, and sexual battery, Code § 18.2-67.4.

A lesser included offense is an offense which is composed entirely of elements that are also elements of the greater offense. Thus, in order for one crime to be a lesser included offense of another crime, every commission of the greater offense must also be a commission of the lesser offense. *See Sansone v. United States*, 380 U.S. 343 (1963). As an exception to the American rule barring merger of criminal offenses, a criminal defendant is entitled to jury instructions for all lesser included offenses supported by the evidence. *Keeble v. United States*, 412 U.S. 205 (1973); *Miller v. Commonwealth*, 5 Va. App. 22, 24, 359 S.E.2d 841, 842 (1987).

Based on this, we find that the trial court properly denied the instruction on sexual battery. The difference between aggravated sexual battery and sexual battery is the age of the victim. Sexual abuse of a child at least thirteen but less than fifteen years of age when against the will of the victim by force, threat or intimidation is, by definition, aggravated sexual battery. Code § 18.2-67.3. Since the evidence would not support a finding that Kristi was not between thirteen and fifteen years of age, it being uncontradicted that she was fourteen, a sexual battery instruction would have been inappropriate in this case. *Miller*, 5 Va. App. at 24, 359 S.E.2d at 842.

We also find that the trial court properly denied the instruction on contributing to the delinquency of a minor because it is not a lesser included offense of aggravated sexual battery; that is, not every case of aggravated sexual battery is also necessarily a case of contributing to the delinquency of a minor as defined by the statute. Contributing to the delinquency of a minor, Code § 18.2-371, requires that a person eighteen years of age or older willfully contribute to an act, omission, or condition that renders a child, delinquent, in need of services, or abused or neglected as defined in Code § 16.1-228(5). The offense of aggravated sexual battery does not require proof that the defendant was eighteen years of age or older; thus, all of the elements of Code § 18.2-371 are not included within the offense of Code § 18.2-67.3. In this case, Kauffmann's conduct constituted contributing to the delinquency of a minor, and Kauffmann could have been charged with contributing to the delinquency of a minor. Nevertheless, the fact that in this particular case, the defendant may, in fact, have been eighteen years of age or older does not turn what is not a necessa-

rily lesser included offense as a matter of law into one that is, merely as a matter of fact. *See Jones v. Commonwealth*, 218 Va. 18, 22, 235 S.E.2d 313, 315 (1977). We express no opinion on the issue whether, apart from the age element of Code § 18.2-371, the child victim of an aggravated sexual battery also necessarily is a child in need of services as defined by Code § 16.1-228(5).

Further, we find that, based on the record, the defense did not offer at trial an instruction on taking indecent liberties with a child. Therefore, we may not consider the propriety of that instruction on appeal. Rule 5A:18.

█ It is well established that the choice of offenses for which a criminal defendant will be charged is within the discretion of the Commonwealth's Attorney, *Davis v. Commonwealth*, 4 Va. App. 27, 30, 353 S.E.2d 905, 907 (1987), and it is not a legally cognizable argument for Kauffmann to complain that he was tried for the crime of aggravated sexual battery rather than the different offenses that may have arisen from his relationship with Kristi.

*Reversed and remanded.*

Cole, J., concurred.

Benton, J., concurring in part, dissenting in part, and concurring in the judgment of reversal.

I join in those parts of the opinion which hold: (1) that the child's statements were hearsay and inadmissible, (2) that the trial judge did not err in quashing the subpoena duces tecum, and (3) that the trial judge did not err in refusing to instruct the jury as to the offenses of taking indecent liberties with a child and sexual battery. Accordingly, I join in the judgment reversing the conviction and remanding for a new trial if the Commonwealth be so advised. I dissent from the remainder of the opinion, however, because I would also hold (1) that the confessions were inadmissible, and (2) that the trial judge erred in refusing the lesser included offense instruction concerning contributing to the delinquency of the child.

I

I agree with the majority that *Oregon v. Mathiason*, 429 U.S. 492 (1977), suggests that Kauffmann's initial statement to the po-

lice was not rendered inadmissible solely because the police failed to give Kauffmann *Miranda* warnings. The record does not reflect that Kauffmann "was in custody for purposes of the *Miranda* rule." *Id.* at 496. Kauffmann asserts, however, that the detective who questioned him "had promised not to prosecute him," thus, raising the additional question whether Kauffmann's statements were involuntary and unknowing.

> The relevant inquiry is whether, in fact, the . . . statement was . . . voluntarily made. As in any such inquiry, the finder of fact must examine the surrounding circumstances and the entire course of police conduct with respect to the suspect in evaluating the voluntariness of his statements. The fact that a suspect chooses to speak after being informed of his rights is, of course, highly probative.

*Oregon v. Elstad*, 470 U.S. 298, 318 (1985).

Detective Urban arrived at Kauffmann's residence within three hours of the daughter's suicide and shortly after Kauffmann and his wife had viewed their daughter's body in the hospital. The detective had been informed by the daughter's friend of the daughter's statement that, "Dad molests me in the morning before school." The detective told Kauffmann that it was routine procedure for the police to examine the belongings of persons who have committed suicide and asked to search the child's room. The detective was, in fact, looking for any items that would further incriminate Kauffmann. After the detective found the notebook and read it, he asked Kauffmann to follow him to the police station.

At the station, the detective interviewed Kauffmann for a period of an hour and forty-five minutes, during which time Kauffmann was emotional and wept. The detective testified that Kauffmann "wanted to know, if he told [Urban] certain things, how did he know that [the police] wouldn't come back and do something to him at a later date; and secondly, were we going to tell his wife." The detective assured Kauffmann that he would not tell his wife and further "told him that I felt that, just due to what happened that day, there was enough grief and hardship sitting on his shoulders right now." The detective further testified that he had no intention at that time of obtaining an arrest warrant. Visibly upset and weeping, Kauffmann then admitted to the

detective that he had fondled his daughter on several occasions. The detective did not give *Miranda* warnings but took notes of the conversation.

Two days later, the day prior to the daughter's funeral, Kauffmann and his wife were summoned to the police station to talk further with the detective and a mental health social worker. The detective said the meeting with the mental health social worker was "set up in order to help [Kauffmann] and his wife deal with this thing." When they arrived, Kauffmann was separated from his wife and interviewed by Detective Urban in the presence of the mental health social worker. At this time the detective read *Miranda* rights to Kauffmann. Kauffmann, who was again very emotional, upset, and weeping, told them that he had sexually fondled his daughter.

The Commonwealth bears the burden of proving by a preponderance of the evidence that Kauffmann's statements were voluntary. *Rodgers v. Commonwealth*, 227 Va. 605, 608, 318 S.E.2d 298, 300 (1984). In making the determination whether the Commonwealth has borne its burden, the court must consider "any actual coercion or other circumstances calculated to undermine the suspect's ability to exercise his free will." *Elstad*, 470 U.S. at 309. A trial court errs when it admits as evidence a "confession . . . induced by the hope, inspired by what [a law enforcement agent] had said to [an accused], that he would thereby escape the extreme penalty of the law for this offense." *Jackson v. Commonwealth*, 116 Va. 1015, 1019, 81 S.E. 192, 193 (1914). Thus, whenever a statement is "induced by the hope of the gain of some advantage or to avoid some evil in reference to the proceeding against the declarant," it is inadmissible. *Id.* at 1020, 81 S.E. at 194. Thus, in *Belcher v. Commonwealth*, 160 Va. 891, 168 S.E. 468 (1933), the Supreme Court held that implicit promises of leniency made during an interrogation render the induced statement involuntary.

The testimony of the Commonwealth's attorney shows that, though he may not have made any express promise of immunity, or light punishment to [the accused], he intentionally so conducted his conversations with his brother and with him, and so shaped his language, as to raise in the mind of [the accused] the hope and belief that, if he told what he knew

about this crime and testified in behalf of the Commonwealth against the others . . . he would not be prosecuted. A confession procured under such circumstances is not in law a voluntary confession, and is not admissible.

*Id.* at 905, 168 S.E. at 473.

Detective Urban exceeded the bounds of appropriate cajoling and created an expectation of leniency when, in response to Kauffmann's inquiry whether the authorities would "come back and do something to him at a later date" if he talked, the detective reassured Kauffmann that due to his daughter's suicide "there was enough grief and hardship sitting on [Kauffmann's] shoulders right now." The detective intentionally and explicitly used the tragic death of Kauffmann's daughter as a ploy to suggest that no further punishment was in store because Kauffmann had been adequately punished. The detective's reassurance was an inducement which impermissibly interfered with Kauffmann's ability to make a knowing, voluntary statement. Kauffmann was led to believe that his statement would have had the effect of freeing him from prosecution. "[S]uch a powerful inducement [was] thus presented to his mind as to lead him to make [the statement] without regard to its truth or falsity, and hence it [was] involuntary." *Belcher v. Commonwealth*, 160 Va. at 905-06, 168 S.E. at 473.

In *Colorado v. Connelly*, 479 U.S. 157 (1986), a suspect approached the police and confessed to a crime without any "indication whatsoever that [the suspect] was suffering from any kind of mental illness." 479 U.S. at 160-61. The Supreme Court held that in the absence of coercive police conduct, a suspect's mental condition alone cannot provide a basis for concluding that his statement was involuntary. *Id.* at 163-67. Unlike the accused in *Connelly*, Kauffmann did not instigate contact with the police but, rather, was approached by the police and interrogated on two occasions when it was apparent to the police that he was emotionally upset and disturbed. Moreover, the implicit promise of leniency that the detective made to Kauffmann as an inducement to stimulate his confession sufficiently distinguishes this case from *Connelly*.

Likewise, the fact and circumstances of the promise distinguish this case from *Elstad*. When Kauffmann went to the police station the second time, he and his wife had been told that the purpose of

the visit was to meet with a mental health social worker. Consistent with the detective's earlier promise not to inform Kauffmann's wife of the earlier discussion, Kauffmann's wife was taken to a separate room. Kauffmann was placed in a room with the mental health social worker and the detective, who earlier implicitly had assured him that the police "would not come back and do something to him at a later date." Without revoking the earlier assurance, the detective gave Kauffmann *Miranda* warnings and proceeded to interview him concerning the same matters.

It cannot be said that the Commonwealth, on these facts, has established that Kauffmann's statements were "free and voluntary." *Malloy v. Hogan*, 378 U.S. 1, 7 (1964). These facts and circumstances reveal an official overreaching that negates the exercise of free and voluntary will. In addition to interrogating Kauffmann at times when he was unable to contain his emotions, the record clearly establishes an implicit promise by the detective not to prosecute Kauffmann for his admissions. "The Fourteenth Amendment secures against state invasion . . . the right of a person to remain silent unless he chooses to speak in the unfettered exercise of his own will. . . ." *Id.* at 8.

The majority reads *Elstad* too broadly. The Supreme Court in *Elstad* did not hold that admission of the initial unwarned statement, which was followed by a second statement obtained after a *Miranda* warning, was harmless error. In *Elstad*, the first unwarned statement was suppressed by the trial judge and was not admitted at trial. 470 U.S. at 302. The Supreme Court thus had no cause to consider whether "the admission of the first statement was harmless error" but, rather, held only "that a suspect who has once responded to unwarned *yet uncoercive questioning* is not thereby disabled from waiving his rights and confessing after he has been given the requisite *Miranda* warnings." 470 U.S. at 318 (emphasis added). In this case, the evidence of official overreaching and the lack of free will also compel a reversal of the order denying the motion to suppress Kauffmann's statements to the police.

## II

The record reflects that Kauffmann tendered Instruction B concerning contributing to the delinquency of a minor. The trial

judge refused that instruction, saying that there was no evidence to support it because the evidence did not establish that the daughter consented to sexual conduct. Stating that it is possible for a person to commit aggravated sexual battery and not at the same time contribute to the delinquency of a child in violation of Code § 18.2-371, the majority relies upon a different theory to uphold the trial judge's refusal. I disagree.

The majority holds that contributing to the delinquency of a child, as statutorily prohibited by Code § 18.2-371, is not a lesser included offense of aggravated sexual battery because a child charged with aggravated sexual battery could not be convicted under Code § 18.2-371. In my opinion that holding fails to recognize the statutory mesh between the juvenile law and the criminal law. The juvenile and domestic relations district court has exclusive original jurisdiction over all matters concerning children — persons less than eighteen years of age. Code §§ 16.1-228 and 16.1-241. Accordingly, the jurisdiction of the circuit court in criminal proceedings extends only to persons eighteen years of age or older, except and unless there has been a transfer of the child to the circuit court pursuant to Code § 16.1-269. Obviously, a child could not be initially charged with a violation of Code § 18.2-371 and transferred to the circuit court for trial as an adult on that charge. A child could be charged with aggravated sexual battery, however, and transferred to the circuit court for trial as an adult. When a child is tried for a felony in the circuit court, that court may render a verdict and impose sentence just as if the child were an adult. Code § 16.1-272. I do not read Code § 18.2-371 to exclude from its coverage a child who has been statutorily determined to be an adult for purposes of transfer to the circuit court for trial under a felony statute and for sentencing as a felon. Thus, where a child is charged with aggravated sexual battery and transferred to the circuit court of trial as an adult, that child may be acquitted of the felony and convicted, as any adult, of any applicable misdemeanor. Code § 16.1-272.

The refused instruction should have been given. Code § 18.2-371 broadly states that "[a]ny person eighteen years of age or older, including the parent of any child, who shall willfully contribute to, encourage, cause or tend to cause any act, omission, or condition which renders a child delinquent, in need of services, or abused or neglected as defined in § 16.1-228, shall be guilty of a

Class 1 misdemeanor." Equally broad is the statutory definition of "child in need of services." That phrase is defined to mean:

> [A] child whose behavior, conduct or condition presents or results in a serious threat to the well-being and physical safety of the child; however, no child who in good faith is under treatment solely by spiritual means through prayer in accordance with the tenets and practices of a recognized church or religious denomination shall for that reason alone be considered to be a child in need of services.

Code § 16.1-228(5). The evidence in this case would support a finding that Kauffmann's daughter was in need of services, as that phrase is statutorily defined.

Under the indictment the Commonwealth was required to prove that the sexual abuse was against the will of the daughter. The evidence in this case as to that element was purely circumstantial. Regardless of whether the sexual conduct was against the daughter's will, the evidence would have supported a finding that she was in need of services. Certainly the jury could have found that Kauffmann's sexual conduct with his daughter resulted in a serious threat to her well being.

> A jury, not the trial court, weighs the evidence and assesses the credibility of the witnesses. It is immaterial that the jury might have rejected the lesser-included offense; if there is evidence tending to support the lesser offense, a trial court errs in refusing an instruction thereon.

*Barrett v. Commonwealth*, 231 Va. 102, 107, 341 S.E.2d 190, 193 (1986) (citations omitted). In view of the circumstantial nature of the evidence, I would hold that the trial judge erred in failing to instruct the jury as to the lesser offense.

### III

For the reasons stated I would reverse and remand for a new trial if the Commonwealth be so advised.