COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Decker, Judges Malveaux and Athey
Argued by videoconference


CHRISTIAN LINDALE STEVENSON

                                                    MEMORANDUM OPINION* BY
v.       Record No. 1614-19-1                       JUDGE MARY BENNETT MALVEAUX
                                                    NOVEMBER 24, 2020
COMMONWEALTH OF VIRGINIA


                    FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
                              Michael A. Gaten, Judge[1]

                    Charles E. Haden for appellant.

                    Matthew P. Dullaghan, Senior Assistant Attorney General (Mark R.
                    Herring, Attorney General, on brief), for appellee.


        Christian Lindale Stevenson ("appellant") entered conditional Alford pleas[2] to the

charges of shooting into an occupied vehicle, in violation of Code § 18.2-154, attempted robbery,

in violation of Code §§ 18.2-26 and -58, maiming, in violation of Code § 18.2-51, aggravated

maiming, in violation of Code § 18.2-51.2, and three counts of use of a firearm in the

commission of a felony, in violation of Code § 18.2-53.1.  On appeal, he argues that the trial

court erred by denying his motion to suppress certain statements made to law enforcement that

were obtained in the absence of a Miranda[3] warning and in the absence of a voluntary, knowing,

and intelligent waiver of his Miranda rights.  For the following reasons, we affirm the trial court.

---

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

        [1] Judge Christopher W. Hutton presided over appellant's suppression hearing.

        [2] See North Carolina v. Alford, 400 U.S. 25 (1970).

        [3] See Miranda v. Arizona, 384 U.S. 436 (1966).

UNPUBLISHED

## I.  BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the Commonwealth, the prevailing party at trial." Gerald v. Commonwealth, 295 Va. 469, 472 (2018) (quoting Scott v. Commonwealth, 292 Va. 380, 381 (2016)).  In doing so, we discard any of appellant's conflicting evidence, and regard as true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence.  Id. at 473.  This applies to the evidence presented both at the suppression hearing and at trial.  Tirado v. Commonwealth, 296 Va. 15, 24 (2018).

On June 1, 2018, City of Hampton Police Investigator David Giles was investigating an incident at a Zaxby's restaurant, in which two persons were shot in the parking lot.  While at the crime scene, Investigator Giles received a call from Officer Lucy that a walk-in gunshot wound patient had arrived at Sentara CarePlex.  Giles went to the hospital and encountered appellant, who had a gunshot wound to his buttocks area.

Investigator Giles testified that when he entered appellant's hospital room to talk with him, he was still trying to determine what had happened at Zaxby's and was unsure if appellant was the victim or the perpetrator in the shooting.  Giles had "[v]ery briefly" spoken with two people who had been injured in the shooting at Zaxby's before they were transported to Riverside Hospital.  However, he had not yet reviewed any security camera footage from the scene of the shooting.

Investigator Giles questioned appellant about his involvement in the shooting.  Appellant initially said that he had been shot in Newport News, but Giles told him that he knew appellant had been at Zaxby's.

Giles told appellant that police were going to collect a gunshot residue kit from his hands, and they did so.  Giles testified that the test would have been conducted regardless as to whether

appellant was the suspect in or victim of the shooting. Giles also asked appellant if he would pass a polygraph test.

Detective Raines was working with Giles and had arrived at the Sentara CarePlex with him. Officer Ramirez had responded to the hospital in response to the gunshot victim's arrival. These two officers remained in the room with Giles during the entire questioning. Two additional officers, Detectives Lawrence and Healy, were in and out of the hospital room while Investigator Giles spoke with appellant. Officer Lucy, who was working "overtime extra-duty security" for the hospital, was in the hallway.

Giles, Raines, and Lawrence were dressed in civilian clothing. Ramirez, Lucy, and Healy were in uniform.

Giles testified as to the officers' positioning in the room when he began to question appellant. He noted that he was leaning against the railing of the bed while Detective Raines was on the other side of the bed. Detective Lawrence was located at the foot of appellant's bed but did not stay in the room the entire time. Officer Ramirez was standing near the door but was "not guarding the door or stopping the door."

Giles testified that appellant was not restrained, was not told that he was under arrest, and was not told that he was not free to leave. Hospital personnel continued to provide medical treatment to and collect insurance information from appellant while the law enforcement officers were in the room. Investigator Giles stated that the officers "stepped away whenever they came in to do something."

One of appellant's family members also arrived at the hospital and stayed in appellant's room for "quite a while." Giles testified that he would not have allowed the family member to remain in the room if he thought appellant was a suspect.

At one point, a hospital employee asked appellant for his insurance information. Appellant directed the employee to a bag on the floor containing his belongings. The employee removed appellant's pants from the bag, and several unfired bullets fell out of the pants pocket to the hospital floor. Ramirez told the employee to step away from the clothing and told appellant's family member to leave the room. Giles then asked appellant about the bullets. Giles did not testify as to any response given by appellant.

Investigator Giles testified that he believed that his questioning did not prolong appellant's stay at the hospital because the medical staff was able to continue treating appellant. Giles estimated that he questioned appellant for fifteen to twenty minutes, and Giles left the hospital while appellant was still receiving treatment and prior to his discharge from the hospital.

After Investigator Giles left the Sentara CarePlex, he went to Riverside Hospital and re-interviewed the two shooting victims before he returned to the police station. Arrest warrants for appellant were obtained sometime after Giles arrived at the police station.

Once appellant was discharged, Officer Ramirez transported him from the hospital to the police department, where Giles advised appellant of his Miranda rights. Appellant was still in his hospital gown, as his clothing remained in police custody. Investigator Giles did not believe that appellant was transported in handcuffs, and appellant was not in handcuffs when Giles spoke with him at the police station.

Appellant filed a motion to suppress the statements he made at the hospital to police. The trial court denied the motion, stating that it did not see the "facts and circumstances" surrounding appellant's hospitalization to be "coercive and suggestive." The trial court found that appellant voluntarily went to the hospital for treatment which he was receiving at the time the police were there and that the police did not interfere with appellant's treatment. Further, police were there investigating a shooting "with substantial confusion about who was a victim and who may have

been a perpetrator." According to the trial court, nothing Investigator Giles testified to "should have suggested to [appellant] that he was in custody when he was not." The trial court concluded that appellant was not in custody at the hospital and that his statements made at the Hampton Police Department were not the result of coercive behavior.

## II. ANALYSIS

Appellant argues that the trial court erred in denying his motion to suppress certain statements that were obtained in the absence of a Miranda warning and in the absence of a voluntary, knowing, and intelligent waiver of his Miranda rights.

When challenging the denial of a motion to suppress evidence, the appellant bears the burden of establishing that reversible error occurred. Glenn v. Commonwealth, 275 Va. 123, 130 (2008). At this juncture, the Court considers the evidence in the light most favorable to the Commonwealth and affords it the benefit of all inferences fairly deducible from that evidence. Mason v. Commonwealth, 291 Va. 362, 367 (2016). Appellant must show "that even when the evidence is reviewed in that light, denying the motion to suppress was reversible error." Taylor v. Commonwealth, 70 Va. App. 182, 186 (2019) (quoting Sidney v. Commonwealth, 280 Va. 517, 520 (2010)).

"Whether the circumstances of [a police interview] were such as to require Miranda warnings is a mixed question of law and fact." Keepers v. Commonwealth, 72 Va. App. 17, 33 (2020) (alteration in original) (quoting Spinner v. Commonwealth, 297 Va. 384, 392 (2019)). In reviewing the trial court's ruling, we are "bound by [its] findings of historical fact unless 'plainly wrong,' and we 'give due weight to the inferences drawn from those facts' by the trial judge and law enforcement." Salahuddin v. Commonwealth, 67 Va. App. 190, 202 (2017) (quoting McGee v. Commonwealth, 25 Va. App. 193, 198 (1997) (*en banc*)). "We review *de novo* the trial court's application of the law to the particular facts of the case." Taylor, 70 Va. App. at 186.

"The right to have counsel present during a custodial interrogation is an axiom of American law expressed in Miranda v. Arizona, 384 U.S. 436 (1966) and its progeny." Zektaw v. Commonwealth, 278 Va. 127, 135 (2009). "Where an accused in a criminal case is subjected to custodial police interrogation, he first must be advised of his Fifth Amendment rights as defined in Miranda . . . for any statement he makes to be admissible in evidence." Commonwealth v. Thornton, 24 Va. App. 478, 488 (1997).

"[P]olice officers are not required to administer Miranda warnings to everyone whom they question." Oregon v. Mathiason, 429 U.S. 492, 495 (1977). "Miranda warnings are not required when the interviewee's freedom has not been so restricted as to render him or her 'in custody.'" Aldridge v. Commonwealth, 44 Va. App. 618, 641 (2004) (quoting Harris v. Commonwealth, 27 Va. App. 554, 564 (1998)). A determination of whether an individual is in custody for purposes of Miranda is an objective inquiry and is based on the totality of the circumstances. Stansbury v. California, 511 U.S. 318, 323 (1994). Under "Miranda case law, 'custody' is a term of art that specifies circumstances that are thought generally to present a serious danger of coercion." Howes v. Fields, 565 U.S. 499, 508-09 (2012). Courts do not find that degree of coercive danger "simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect" as the perpetrator. Mathiason, 497 U.S. at 495.

"In assessing whether the interrogation was custodial, we inquire 'whether there [was] a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.'" Brooks v. Commonwealth, 282 Va. 90, 96 (2011) (alteration in original) (quoting California v. Beheler, 463 U.S. 1121, 1125 (1983) (*per curiam*)).

This Court has identified a number of circumstances to be considered when determining whether or not a suspect was in custody, including: (1) the manner in which the individual was

summoned by the police; (2) the familiarity or neutrality of the surroundings; (3) the number of officers present; (4) the degree of physical restraint; (5) the duration and character of the interrogation; and (6) the extent to which the officers' beliefs concerning the potential culpability of the individual being questioned were manifested to the individual. Wass v. Commonwealth, 5 Va. App. 27, 32-33 (1987); Harris, 27 Va. App. at 565. However, in evaluating whether an individual is in custody when questioned by the police, no single factor is dispositive. Wass, 5 Va. App. at 33. Further, not all of the factors might be relevant in any given case. Id. Rather, "[t]he totality of circumstances must be considered." Id. at 32.

Appellant contends that the factors listed in Harris and Wass establish that he was not free to leave during the questioning at the hospital. We reject appellant's argument and instead hold that the consideration of these factors as a whole demonstrates that appellant was not in custody.

First, as to the manner in which appellant was summoned by police, appellant was not summoned at all. He was at the location of the questioning (the Sentara CarePlex) of his own free will. He chose the hospital and voluntarily transported himself there. Police encountered appellant later. As such, there was no police summoning of appellant. Appellant was already at the hospital of his own volition when he initially encountered police. See Lanier v. Commonwealth, 10 Va. App. 541, 554-55 (1990) (concluding that appellant's statement to police while he was in the back seat of a locked police vehicle did not require a Miranda warning in part because he entered the police car "of his own accord").

Second, as to the familiarity or neutrality of the surroundings, we again note that appellant chose the location in which to seek medical treatment. He was at the hospital for medical treatment, and the police did not interfere with or prolong that treatment. Hospital staff

interrupted when they needed to conduct business or treat appellant. Appellant's family member was also allowed to be in the hospital room with him.

Third, as to the number of officers present, while five officers were present at the hospital, there were only three who stayed in appellant's room, and only one was in uniform. There was one other officer working off-duty as hospital security, but the record does not suggest that this officer participated in the investigation. Cf. Wass, 5 Va. App. at 34 (concluding that the defendant was in custody for purposes of Miranda in part because he was confronted by twelve armed officers, four of whom arrived by helicopter). While more than one officer was present in appellant's hospital room during questioning, we conclude that the number of officers in the present case does not suggest coercion.

Fourth, as to the degree of physical restraint, in the instant case appellant was not physically restrained in any way by police. Appellant was in a hospital bed due to the medical treatment that he voluntarily sought. He was not handcuffed, locked in the room, or otherwise restrained. See Ford v. Commonwealth, 28 Va. App. 249, 257 (1998) (finding that the defendant was not in custody and noting in its analysis that "[a]lthough [the defendant] was not free to leave, he was not restrained, handcuffed, or searched"). Further, while Officer Ramirez was standing near the door, he was "not guarding the door or stopping the door." We also agree with the Commonwealth's assertion that appellant's submission to a gunshot residue test was not coercive. He was at the hospital for treatment of a gunshot wound, and as a potential victim of a shooting, Investigator Giles testified that it would not have been unusual for appellant to have that test. In addition, to the extent that appellant argues he was restrained when bullets fell out of his pants pocket and police cleared the hospital room, this action was necessary both for safety and to preserve potential evidence, and it involved no physical confinement of appellant. As there was no restraint on the part of police, this factor also leans in favor of the Commonwealth.

- 8 -

Fifth, as to the duration and character of the interrogation, we conclude that a reasonable person in appellant's situation would not have believed that he was in custody. The questioning lasted no more than twenty to thirty minutes,[4] and it did not prolong or interfere with his medical treatment. Hospital personnel continued treating appellant even after police had concluded their questioning and left the hospital. The duration of appellant's interaction with police does not suggest that appellant was in custody. See Ramos v. Commonwealth, 30 Va. App. 365, 369-70 (1999) (rejecting appellant's suggestion that a twenty-one-minute detention, among other circumstances, created a custodial interrogation).

Appellant argues that the character of the interrogation was "undoubtedly coercive," citing the gunshot residue test, clearing of the room at one point, and the question to appellant about whether he would pass a polygraph test. However, we conclude that these circumstances, viewed in light of the factors we previously discussed, do not support the finding that appellant was in custody for purposes of Miranda while in the hospital room.

As we have previously discussed, Investigator Giles testified that a gunshot residue test is given to anyone involved in a shooting, and appellant's hospital room was cleared for a proper purpose. Further, no evidence in the record supports appellant's contention that anyone suggested that he would have to submit to a polygraph test; rather, Giles asked appellant about taking a lie detector test and if he would pass the test. Finally, it is true that Giles told appellant that they knew he had been at Zaxby's, where a shooting had occurred. However, that statement was in response to appellant's statement to police that he had been shot in Newport News. Investigator Giles's response, therefore, did not indicate that he thought appellant had been the shooter, but merely that his gunshot wound had occurred at Zaxby's, not in Newport News. Moreover, at the time law enforcement was at the hospital with appellant, the situation was very

---

[4] Giles testified that he was in appellant's hospital room "15 to 20 minutes maybe."

much in flux, with confusion about what had happened, who was a victim, and who was a perpetrator. As such, the police did not yet have a belief that appellant was culpable in that shooting.

This Court has previously held that "police may, within the scope of an investigative stop, ask a suspect to explain suspicious circumstances." Ford, 28 Va. App. at 257. Giles's conversation with appellant was no more than an attempt to make sense of a confusing and still-evolving situation. Even as an investigation progresses, "Miranda warnings are not required merely because . . . the investigation has centered on the person being questioned." Kauffmann v. Commonwealth, 8 Va. App. 400, 404-05 (1989). Moreover, the fact that an investigation has become "accusatory and focused upon a suspect is not necessarily determinative of custody." Wass, 5 Va. App. at 33.

In this case, Investigator Giles testified that he would not have allowed appellant's relative to stay in the hospital room had appellant been considered a suspect. It was not until after Giles left the hospital and obtained more information from the two victims at Riverside Hospital that he went to the police station and gave appellant a Miranda warning. As the Commonwealth noted at oral argument, this permits an inference that Giles did not develop appellant as a suspect until that point. Further, the trial court made a specific factual finding that police were at the hospital investigating a shooting with "substantial confusion" as to who was a victim and who was a perpetrator, a finding that is binding on appeal as it is not plainly wrong or without evidence to support it.

Considering all of these circumstances, a reasonable person in appellant's position during the hospital interview would have understood that his freedom was not restricted to a degree associated with a formal arrest. See Harris, 27 Va. App. at 564; see also Webber v. Commonwealth, 26 Va. App. 549 (1998), where the defendant, while at the hospital with his

injured child, told a police officer that he "[didn't] want to talk to anyone."  This Court held that

the defendant's statement "did not invoke <u>Miranda</u> protections," because he was not in custody

at the hospital.  <u>Id.</u> at 556.[5]  Thus, we conclude that the evidence supports a finding that appellant

was not in custody when he made his statements to police in the hospital room.

### III.  CONCLUSION

Based upon the facts of this case, we conclude that appellant was not in custody at the

hospital, and thus police officers were not required to provide <u>Miranda</u> warnings to appellant

before questioning him.  As such, the trial court did not err by denying appellant's motion to

suppress.  Accordingly, we affirm.

<u>Affirmed.</u>

---

[5] <u>Cf.</u> <u>Dixon v. Commonwealth</u>, 270 Va. 34 (2005), and <u>Hasan v. Commonwealth</u>, 276 Va. 674 (2008), where the Supreme Court of Virginia held that the defendants *were* in custody for <u>Miranda</u> purposes.  In <u>Dixon</u>, the defendant was restrained in handcuffs and placed in a locked police car.  <u>Dixon</u>, 270 Va. at 38.  The Court found that a reasonable person subjected to *both* of those restraints "would conclude that he was in police custody."  <u>Id.</u> at 41.  In <u>Hasan</u>, between six and eight police officers conducted a traffic stop, in which they brought a K-9 unit, drew their weapons, removed the defendant from the vehicle, and handcuffed him.  <u>Hasan</u>, 276 Va. at 677.  The Court noted that the character of the detention, which "was not similar to an ordinary traffic stop," would lead a reasonable person in that position to understand "'that his freedom was being restricted to a degree associated with a formal arrest.'"  <u>Id.</u> at 680-81 (quoting <u>Dixon</u>, 270 Va. at 40).