## Richmond

### ROGER H. MOORE,

### V.

### COMMONWEALTH OF VIRGINIA

June 12, 1981.

Record No. 801815.

Present: All the Justices.

*Thomas J. Harrigan* for appellant.
*Jerry P. Slonaker, Assistant Attorney General (Marshall Coleman, Attorney General,* on brief), for appellee.

CARRICO, C.J., delivered the opinion of the Court.

In separate indictments, the defendant, Roger H. Moore, was charged that, on June 24, 1978, with lascivious intent, he (1) did entice, allure, persuade, or invite a male child under the age of 14 to enter a house for the purpose of fondling or feeling the sexual or genital parts of the child, and (2) did fondle or feel the sexual or genital parts of a male child under the age of 14. Tried by a jury, the defendant was convicted, and his punishment was fixed at imprisonment for one year on the enticing charge and at three years on the fondling charge. The defendant was sentenced in accordance with the jury's verdicts.

The defendant is a Washington, D.C., attorney. In October, 1976, he was appointed to defend Nathan Hawkins, then aged 12, on a burglary charge arising in the District of Columbia. Later the same month, Hawkins spent the night at the defendant's Washington home. Hawkins slept alone, but the next morning "when [he] woke up" the defendant "was playing with [Hawkins'] dick and . . . butt."

The burglary charge against Hawkins was dismissed. After the dismissal, the defendant told Hawkins that, if he behaved himself and stayed out of trouble "for the next couple years," he would buy Hawkins a bicycle. In June, 1978, Hawkins saw the defendant at the "court building." Hawkins showed the defendant his school report card and reminded him of the promise concerning the purchase of a bicycle. The two agreed to meet later in the week to shop for a bike.

On June 24, 1978, the date of the offenses charged in the indictments,[1] the defendant and Hawkins met about noon. Riding the defendant's motorcycle, they visited bicycle shops in Washington and the Maryland and Virginia suburbs. When Hawkins complained that the wind hurt his eyes, the defendant suggested they go to his new home in Arlington, Virginia, and "get . . . some goggles." The defendant also told Hawkins that he wanted the boy to see the home and that he had "something" for him.

Upon arrival at the home, the defendant gave Hawkins a pair of "[b]lue . . . kind of silk like" undershorts and told him to try them on. Hawkins started into the bathroom to try on the shorts, but the defendant remonstrated, saying he had seen "boys naked before." Still unwilling to undress in front of the defendant, Hawkins went into the bathroom, tried on the shorts, and announced they fit. The defendant insisted, however, that Hawkins "[c]ome out and let [the defendant] see how they fit."

When Hawkins emerged from the bathroom, the defendant "started touching [him]." Hawkins described the episode in the following testimony:

Q  Where did he touch you?
A  My dick and my butt.
Q  How did he touch you there?

---

[1] Hawkins was born July 8, 1964; therefore, he was under the age of 14 on the date the present offenses were alleged to have occurred.

A   He did it kind of slick way, like he was trying to see do they fit me or not.

        \*    \*    \*    \*

Q   Would you just tell the jury what [the defendant] did do and exactly where he touched you.

A   On my dick and my butt.

Q   How many times did he touch you there?

A   He was, you know, fumbling with me for a while, seeing how it fit, "turn around, let me see on this side," you know, seeing how it fit and stuff.

Q   He didn't put his hands under your drawers, did he?

A   No, he didn't.

Following this incident, the defendant and Hawkins left the house to continue their search for a bicycle. In the course of their shopping trip, the defendant initiated a sexually oriented conversation, graphically explaining to Hawkins the topic of the conversation.

At a southeast Washington bicycle shop, Hawkins finally found the bicycle he wanted. The defendant paid for the bike with his personal check for $138.

The defendant's principal contention in this appeal involves testimony admitted by the trial court concerning an incident occurring subsequent to the June 24, 1978 offenses for which the defendant was tried below. This testimony showed that in September, 1978, the defendant asked Hawkins and the latter's teen-aged friend, Diego Chase, to come to his law office to discuss a pending civil matter he was handling. After this subject was discussed, the defendant turned the conversation to sexual matters. He described homosexual acts he had engaged in with other boys, and he offered Hawkins and Chase $200 each to engage in similar acts with him. He pulled down Chase's pants, told Hawkins to hold Chase, and attempted without success to perform a homosexual act upon Chase. He exposed himself and suggested to Chase the type of homosexual act he wished Chase to perform upon him.

The defendant contends the evidence concerning the September, 1978 incident was inadmissible. The Commonwealth offered this evidence, the defendant asserts, merely to show his propensity for depraved conduct, his disposition to commit homosexual acts, and his bad character. The evidence was not admissible for these or any relevant purposes, the defendant argues, because it tended to

confuse the jury, to surprise him in his defense, and to prejudice him before the jury. Moreover, the defendant says, since the September, 1978 incident was "directed at a third party," Diego Chase, there was no "logical or relevant relationship" with the instant offenses, which involved only Hawkins.

We disagree with the defendant. In his original assignments of error, the defendant questioned the admissibility of the evidence, previously outlined herein, concerning the incident occurring in October, 1976, when Hawkins spent the night at the defendant's Washington home and "woke up" to find the defendant fondling him. We refused an appeal from the trial court's ruling admitting that evidence. We did so because we considered the evidence clearly admissible as relevant to the crucial question whether the defendant's touching of Hawkins' "dick and . . . butt" at the time of the instant offenses was with lascivious intent. While the question concerning the prior offense is settled, we believe the rationale underlying our refusal to review the question applies with equal force to the issue involving the subsequent offense.

As a general rule, evidence of other offenses is inadmissible to prove guilt of the crime for which the accused is on trial. *Cumbee* v. *Commonwealth,* 219 Va. 1132, 1137-38, 254 S.E.2d 112, 116 (1979); *Eccles* v. *Commonwealth,* 214 Va. 20, 22, 197 S.E.2d 332, 333 (1973). Exceptions to this general rule, however, are as well established as the rule itself. Pertinent to our present inquiry, where the motive, intent, or knowledge of the accused is at issue, evidence of other offenses is admissible if it shows the conduct or attitude of the accused toward his victim, establishes the relationship between the parties, or negates the possibility of accident or mistake. *Brooks* v. *Commonwealth,* 220 Va. 405, 407, 258 S.E.2d 504, 506 (1979); *Kirkpatrick* v. *Commonwealth,* 211 Va. 269, 272, 176 S.E.2d 802, 805 (1970); *Trogdon* v. *Commonwealth,* 72 Va. (31 Gratt.) 862, 871 (1878).

In two recent decisions involving sex crimes, we held the foregoing exceptions applicable to permit introduction of evidence of prior sexual offenses committed by the accused against the same victim. *Ryan* v. *Commonwealth,* 219 Va. 439, 447, 247 S.E.2d 698, 703-04 (1978); *Herron* v. *Commonwealth,* 208 Va. 326, 327, 157 S.E.2d 195, 196 (1967). The present defendant argues, however, that the trial court's ruling admitting evidence of the subsequent offense "is contrary to established law in Virginia." But, in *Stump* v. *Commonwealth,* 137 Va. 804, 808, 119 S.E. 72, 73

(1923), and *Waitt v. Commonwealth,* 207 Va. 230, 235, 148 S.E.2d 805, 809 (1966), we upheld the admission of evidence concerning subsequent sexual offenses committed by the accused against the same victim. And in *Brown v. Commonwealth,* 208 Va. 512, 158 S.E.2d 663 (1968), we quoted with approval the following statement:

> "[I]t is well settled that in a prosecution for incest, evidence of acts of incestuous intercourse between the parties other than those charged in the indictment or information, *whether prior or subsequent thereto,* is, if not too remote in point of time, admissible for the purpose of throwing light upon the relations of the parties and the incestuous disposition of the defendant toward the other party, and to corroborate the proof of the act relied upon for conviction . . . . The fact that some of the other offenses were remote in point of time from the act under investigation does not of itself render such evidence incompetent, where the acts were repeatedly done up to a comparatively recent period and were all apparently inspired by one purpose." (Emphasis added.)

208 Va. at 516-17, 158 S.E.2d at 667.

■ Here, as indicated previously, the crucial question in the case was whether the defendant's touching of Hawkins' "dick and . . . butt" during the June 24, 1978 incident was with the requisite lascivious intent. Although the defendant did not testify, he sought through cross-examination of Hawkins to show that his touching of the boy was only to determine whether the undershorts fit and that any touching of Hawkins' penis and anus was accidental or for a purpose misunderstood by Hawkins.

While the evidence of the subsequent offense involved a third party, Diego Chase, it also concerned Hawkins as a direct target of the defendant's homosexual advances. As with the prior incident, the subsequent offense, occurring only three months after the instant crime, showed the conduct or attitude of the defendant toward Hawkins, indicated the ongoing nature of their relationship, and negated the possibility that the defendant's touching of Hawkins in the June 24, 1978 incident was accidental or for a purpose misunderstood by Hawkins. Hence, it was not error to admit the evidence concerning the subsequent occurrence.

■ The defendant's remaining contention involves the testimony of a Commonwealth witness, Officer Bruce Hegyi of the Arlington County Police Department, concerning out-of-court statements made to him by Hawkins in an interview. While the defendant makes the generalized claim that the out-of-court statements constituted inadmissible hearsay, the precise thrust of his argument is unclear. As we perceive the argument, the gist of the defendant's grievance is that, in violation of the rule enunciated in *Pepoon* v. *Commonwealth,* 192 Va. 804, 66 S.E.2d 854 (1951), the trial court permitted Officer Hegyi to state that Hawkins made an out-of-court complaint of crime and to recite the details of the complaint. We would note, however, that, if the defendant's argument has other dimensions, he failed to make the proper objections below to support a different argument here. Rule 5:21.

*Pepoon* was a prosecution for sodomy. In the course of trial, the mother of the three-year-old victim had been permitted to testify to an out-of-court statement by the child identifying the accused as the guilty agent and detailing the homosexual acts performed upon the child. We reversed for the error in admitting the mother's testimony. We recognized the rule, unique to rape cases, that evidence of an out-of-court complaint by a rape victim, but not the details of the complaint, is admissible. We said, however, that this rule is not applicable to sodomy cases. 192 Va. at 811, 66 S.E.2d at 858.

We do not question the viability of the *Pepoon* holding. Indeed, recently, in *Cartera* v. *Commonwealth,* 219 Va. 516, 518-19, 248 S.E.2d 784, 786 (1978), we reiterated the view that evidence of an out-of-court complaint of crime, but not the details of the complaint, may be admitted only in rape cases.

We believe, however, that the *Pepoon* rule is inapposite here. The Commonwealth called Officer Hegyi to the stand following a lengthy and vigorous cross-examination of Hawkins by the defense. During that cross-examination, the defense attacked Hawkins' credibility with inconsistent statements he had made in four instances: (1) at a preliminary hearing; (2) during interrogation by the police; (3) in a conversation with his attorney in an unrelated case; and (4) in the course of an interview with a private investigator employed by the defense.

In our opinion, the applicable rule is stated in *Clere* v. *Commonwealth,* 212 Va. 472, 473, 184 S.E.2d 820, 821 (1971). In *Clere,* a murder prosecution, the victim's wife gave the police two

written statements. In the first, she confessed she killed her husband, without implicating Clere. In the second, she exonerated herself and identified Clere as the murderer. At trial, she testified Clere was the murderer. On cross-examination, the defense questioned her concerning what she had said in her first statement. On redirect, the prosecution questioned her about what she had said in her second statement and then offered both statements in evidence. Both were admitted. We affirmed.

Our rationale in affirming *Clere* is particularly pertinent here. We said that it is appropriate to admit a prior consistent statement "after a witness's testimony has been attacked by the admission of a prior inconsistent statement." 212 Va. at 473, 184 S.E.2d at 821. Further, the "fact that a witness made a prior consistent statement, as well as an inconsistent statement, is relevant in considering the impeaching effect of the inconsistent statement on the witness's testimony."[2] *Id.* See also *Niblett* v. *Commonwealth,* 217 Va. 76, 78, 225 S.E.2d 391, 392 (1976).

Finding no reversible error in the judgments complained of, we will affirm the defendant's convictions.

*Affirmed.*

---

[2] By written instruction granted at the request of the defendant, the trial court told the jury to consider evidence of prior consistent statements only with reference to Hawkins' credibility and not "as evidence of facts at issue" in the case.