COURT OF APPEALS OF VIRGINIA


Present:   Judges Humphreys, Clements and McClanahan
Argued at Richmond, Virginia


IRIS CYNTHIA FRANKLIN
                                        MEMORANDUM OPINION[*] BY
v.        Record No. 0968-06-2          JUDGE JEAN HARRISON CLEMENTS
                                        SEPTEMBER 25, 2007
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                         Bradley B. Cavedo, Judge

            Karen L. Stallard, Supervising Appellate Defender (Office of the
            Public Defender, on briefs), for appellant.

            Stephen R. McCullough, Deputy State Solicitor General (Robert F.
            McDonnell, Attorney General; William E. Thro, State Solicitor
            General, on brief), for appellee.


        Iris Cynthia Franklin (appellant) was convicted in a bench trial of five counts of

embezzlement pursuant to Code § 18.2-111.  We granted appeal on four of the convictions, two

felonies and two misdemeanors.  On appeal, appellant contends the evidence was insufficient as

a matter of law to support her conviction.  Finding no error, we affirm her convictions.

        As the parties are fully conversant with the record in this case, and because this

memorandum opinion carries no precedential value, this opinion recites only those facts and

incidents of the proceedings as are necessary to the parties' understanding of the disposition of

this appeal.

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## I. BACKGROUND

"On appeal, we construe the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom." Zoretic v. Commonwealth, 13 Va. App. 241, 242, 409 S.E.2d 832, 833 (1991) (citing Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975)). We discard evidence favorable to the accused that conflicts with the Commonwealth's evidence. Wactor v. Commonwealth, 38 Va. App. 375, 380, 564 S.E.2d 160, 162 (2002). Viewed by that standard, the evidence demonstrates that from sometime in 2002 until May of 2004, appellant was employed as a customer service representative (CSR) and branch manager at a Richmond branch of Cash-2-U Payday Loans (Cash-2-U), a business offering short-term loans intended for repayment upon a borrower's receipt of his or her next paycheck. Among other duties, appellant was responsible for approving loans; entering into loan agreement contracts with borrowers on behalf of Cash-2-U; receiving cash repayments; applying repayments to the borrowers' accounts; and, entering records of repayments into the Cash-2-U computer. Appellant was not authorized to sign checks drawn on Cash-2-U accounts.

Typically, a borrower who met Cash-2-U loan criteria would give the CSR a blank "security" check drawn on the borrower's personal checking account (security check). The CSR would record the transaction on a computer and generate a disbursement check (disbursement check) drawn on Cash-2-U accounts and printed on the Cash-2-U laser printer. The borrower would endorse the disbursement check; the CSR would then keep the endorsed disbursement check and remit cash in the proper amount to the borrower. Only if the printer failed to operate properly would a CSR be expected manually to write a disbursement check. On such occasions, a CSR would report the printer problem necessitating a written check to the district manager, who was responsible for repairing the printer. The procedure for handwritten disbursement

checks was otherwise identical with the procedure for disbursement checks generated by the printer.

Upon full repayment of a loan to Cash-2-U, a CSR was expected to return to the borrower both the security check and the original of the loan agreement contract stamped "paid." The returned contract functioned as the borrower's receipt. The CSR was to keep a copy of the security check and contract on file, and credit the borrower's account with repayment. Cash-2-U also accepted partial repayments, and a record was kept of each repayment. An accounting of moneys taken in for the day was accomplished each night after the branch was closed. If by accident a CSR failed to credit a borrower's account, the debt typically would remain unpaid only until the error was discovered that night. The proper amount would then be credited to the borrower's account on the same day it was repaid.

David Blankowski was district manager for Cash-2-U, and in that capacity supervised twelve branches, including the branch where appellant was employed. Cash-2-U policy reflected Blankowski's belief that Virginia law prohibited a borrower from having more than one payday loan outstanding at any one time. As a result, Blankowski testified that a borrower who had an outstanding payday loan and who tried to take out another payday loan prior to paying off the first loan typically "couldn't get one." In her testimony, appellant agreed, noting that the computer system simply would not allow it.

In "early to middle 2004," Blankowski discovered appellant had inexplicably generated a manual disbursement check. He had no recollection of any operational issues with the printer, and was never notified that a disbursement check had been manually written during the time he supervised appellant. Blankowski confronted appellant, and she told him in a "defensive" manner that the handwritten check "was something that was resolved." Unsatisfied, Blankowski continued to review Cash-2-U's records and discovered other discrepancies. He confronted

appellant again, telling her that "her name is all over" the discrepant records. Appellant left the Cash-2-U building suddenly, claiming she had a family emergency. Later that afternoon she returned, whereupon Blankowski confronted her again. Upon being told she could be "let go" as a result of the discrepancies, appellant became "combative" and left for the final time.

On May 6, 2004, Blankowski terminated appellant's employment. After termination, appellant received two subsequent paychecks for her work at Cash-2-U, each of which she believed was less than the amount she was owed. As a result, around June 15, 2004, appellant filed a Statement of Claim for Unpaid Wages with the Virginia Department of Labor.

On September 6, 2005, a grand jury returned indictments against appellant on six counts of embezzlement and two counts of forgery. Trial commenced on February 9, 2006. After the close of the Commonwealth's case, one embezzlement charge and both forgery charges were dismissed. Also, two embezzlement indictments were reduced to misdemeanors, as there was no evidence relating to those indictments to show the amount embezzled was more than $200.

At the conclusion of all evidence, the trial court judge stated explicitly that he found the testimony of each prosecution witness credible. He concluded that appellant had accepted loan repayments from five testifying witnesses and that she intentionally failed to credit the accounts in order to divert the funds to some other purpose. Appellant, whose testimony the trial court failed to credit, and who had one prior misdemeanor conviction for issuing a bad check, was convicted on three counts of misdemeanor embezzlement and two counts of felony embezzlement. This appeal followed.

## II. STANDARD OF REVIEW AND RELEVANT LAW

"'The judgment of a trial court sitting without a jury is entitled to the same weight as a jury verdict and will not be set aside unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it.'" Blake v. Commonwealth, 15 Va. App. 706,

707-08, 427 S.E.2d 219, 220 (1993) (quoting Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987)). "The credibility of witnesses, the weight accorded testimony, and the inferences to be drawn from proven facts are matters solely within the province of the fact finder." Carter v. Commonwealth, 38 Va. App. 116, 119, 562 S.E.2d 331, 332 (2002). "Circumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." Coleman v. Commonwealth, 226 Va. 31, 53, 307 S.E.2d 864, 876 (1983). "The Commonwealth need only exclude reasonable hypotheses of innocence that flow from the evidence, not those that spring from the imagination of the defendant." Hamilton v. Commonwealth, 16 Va. App. 751, 755, 433 S.E.2d 27, 29 (1993).

"To establish the statutory crime of embezzlement under Code § 18.2-111, it is necessary to prove that the accused wrongfully appropriated to her use or benefit, with the intent to deprive the owner thereof, the property entrusted to her by virtue of her employment or office." Waymack v. Commonwealth, 4 Va. App. 547, 549, 358 S.E.2d 765, 766 (1987). "[I]t is not necessary to show that the defendant wrongfully appropriated the entrusted property to his or her own personal use or benefit. Code § 18.2-111 only requires that a person 'wrongfully and fraudulently use, dispose of, conceal or embezzle' the property." Chiang v. Commonwealth, 6 Va. App. 13, 17, 365 S.E.2d 778, 780-81 (1988).

Once it is shown that assets entrusted to an accused have been misappropriated, the intent to do so becomes a question for the trier of fact. See Shinn v. Commonwealth, 73 Va. (32 Gratt.) 899, 909 (1879) ("Had the defendant duly accounted for the [funds entrusted to him in the form of a check], that fact would of course establish the fact that he had no intention to appropriate the check. Not having done so, it was a question for the jury whether he intended to embezzle . . . ."). And, as intent is an essential element of the crime of embezzlement under Code

- 5 -

§ 18.2-111, see Dove v. Commonwealth, 41 Va. App. 571, 581, 586 S.E.2d 890, 895 (2003) (holding that where "the Commonwealth's evidence failed to exclude the reasonable hypothesis of innocence that [the accused] acted without fraudulent intent, . . . no rational trier of fact could find him guilty beyond a reasonable doubt"), we will reverse the judgment of the trial court on sufficiency grounds if, taking the evidence in the light most favorable to the Commonwealth, we determine that no "rational trier of fact" could have found beyond a reasonable doubt that appellant intended to embezzle. Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003); see Jackson v. Virginia, 443 U.S. 307, 318-19 (1979) (recognizing that while the trier of fact must conclude prior to conviction that every essential element of the charged crime has been proven beyond a reasonable doubt, on appeal from that judgment an appellate court will affirm so long as "any rational trier of fact" could so have concluded).

"Intent must often be proved by circumstantial evidence," Dove, 41 Va. App. at 578, 586 S.E.2d at 894, and is evinced by the words or conduct of the accused. Bell v. Commonwealth, 11 Va. App. 530, 533, 399 S.E.2d 450, 452 (1991); see Wilson v. Commonwealth, 249 Va. 95, 101, 452 S.E.2d 669, 673-74 (1995) ("Intent is a state of mind that may be proved by an accused's acts or by his statements and that may be shown by circumstantial evidence."). For example, where an accused had access to an employer's missing assets, proof that she acted deceptively or deliberately in contravention of company policy with respect to the missing assets may tend to establish the requisite fraudulent intent. See Smith v. Commonwealth, 222 Va. 646, 283 S.E.2d 209 (1981). Also, "'[w]here a material element of the crime is the fraudulent intent of the accused both the Commonwealth and the accused are allowed broad scope in introducing evidence with even the slightest tendency to establish or negate such intent,' including evidence of similar frauds." Brooks v. Commonwealth, 220 Va. 405, 407, 258 S.E.2d 504, 506 (1979) (quoting Bourgeois v. Commonwealth, 217 Va. 268, 273, 227 S.E.2d 714, 718 (1976)); see

Charles E. Friend, The Law of Evidence in Virginia § 12-10, at 467 (6th ed. 2004) ("[O]ne occurrence can be used as proof of another [logically connected occurrence] . . . [when] the circumstances were in each case substantially similar."). This includes a "pattern of conduct evidencing an intent to defraud." Brooks, 220 Va. at 407, 258 S.E.2d at 506; see McCary v. Commonwealth, 42 Va. App. 119, 129, 590 S.E.2d 110, 115 (2003) (fraudulent intent in construction fraud case established from a pattern of conduct). Thus, with reference to the likelihood in the instant case that the unaccounted for repayments were diverted by mistake, a fact finder might reasonably find it unlikely that an experienced manager would make the same innocent mistake several times over the same limited timeframe and under substantially similar circumstances. See Moore v. Commonwealth, 222 Va. 72, 76, 278 S.E.2d 822, 824 (1981) ("[W]here the . . . intent . . . of the accused is at issue, evidence of other offenses is admissible if it . . . negates the possibility of accident or mistake.").

## III.  ANALYSIS

### A.  INDICTMENT 3176

Appellant was convicted of misdemeanor embezzlement relating to the repayment of a payday loan taken by Timothy Nyambok, a frequent customer at Cash-2-U. Business records admitted through the testimony of Blankowski indicated that on March 26, 2004, Nyambok borrowed $150, for which the payoff amount would be $172.50. On direct examination by the Commonwealth concerning the day he received disbursement of the loan, the following colloquy occurred:

> [Prosecutor]:  Do you remember the approximate date?
>
> [Nyambok]:  I can't remember exactly when.
>
> [Prosecutor]:  Was it March 26, 2004?
>
> [Nyambok]:  Sounds about right, yes.

[Prosecutor]: Do you remember the amount of that loan?

[Nyambok]: It wasn't more than $120.

[Prosecutor]: Is $150 possible?

[Nyambok]: Something like that, yes.

Nyambok testified unequivocally that appellant accepted his cash repayment of "170 something" on May 3, 2004, and that he received a receipt therefor but not the security check. Cash-2-U records indicated no repayment on that day, and Blankowski testified that the loan account was never repaid.[1]

Appellant argues that Nyambok's responses on the issues of loan date and amount could not establish those facts beyond a reasonable doubt, and implies that his entire testimony is rendered therefore unreliable as a matter of law. Thus, she argues, the evidence was insufficient for conviction. We note initially that Nyambok's testimony was not the sole evidence to prove the fact that he took a loan of $150 on March 26, 2004, nor even the primary evidence thereof. Rather, Nyambok's testimony simply corroborated to some degree the record evidence that was admitted through Blankowski.

However, appellant also argues that the amount Nyambok borrowed and the date on which such funds were disbursed are facts the Commonwealth had to prove beyond a reasonable doubt. Indeed, the property alleged to have been embezzled by appellant was the cash Nyambok testified that he repaid, not the disbursed amount. Thus, so long as it can be shown to the requisite legal standard that the loan repayment funds were entrusted to and misappropriated by

---

[1] For the first time on appeal, appellant argues that the evidence did not permit the trial court to exclude as a theory of innocence the possibility that payments were credited on some other day. We will not consider appellant's argument not made with specificity before the trial court. Rule 5A:18; Ohree v. Commonwealth, 25 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998); see also Edwards v. Commonwealth, 41 Va. App. 752, 760, 589 S.E.2d 444, 448 (2003) (en banc) ("Making one specific argument on an issue does not preserve a separate legal point on the same issue for review."). That argument is therefore waived.

appellant in her role as CSR handling Cash-2-U loan repayments, the Commonwealth had the burden to prove neither the specific date on which the loan was disbursed to Nyambok nor the exact amount of the loan he procured.

Moreover, we are aware of no authority for appellant's corollary proposition that in order for a witness to be credible as a matter of law on matters essential to the Commonwealth's case, he must testify with certainty in response to every question the defense deems relevant. To the contrary, the trier of fact could reasonably have determined from his answers that Nyambok was uncertain or unaware of the exact amount he had borrowed almost two years before, but that his uncertainty or ignorance did not extend to matters the prosecution was required to prove beyond a reasonable doubt and for which his testimony was the sole evidence. See Montague v. Commonwealth, 40 Va. App. 430, 436, 579 S.E.2d 667, 669 (2003) (noting that a fact finder need not decide between rejecting or accepting a witness' testimony in full, but may treat separately each fact to which a witness testifies); Barrett v. Commonwealth, 231 Va. 102, 107, 341 S.E.2d 190, 193 (1986) (recognizing that a brain damaged witness who testified on direct that he retained no memory of one set of facts might have other relevant and credible recollections for cross-examination). We therefore find no plain error inhering the fact finder's acceptance of Nyambok's testimony to show that he made a cash repayment of approximately $170 to appellant and that she accepted the repayment in her capacity as CSR for Cash-2-U.

Appellant also argues that the fact that she gave Nyambok a receipt for his repayment militates against her conviction. We decline appellant's invitation to invade the province of the trial court and reweigh the evidence. In a light most favorable to the Commonwealth, the evidence shows that appellant received around $170 cash from Nyambok; the money was entrusted to her for the sole purpose of discharging his debt to her employer; she was aware of her obligation in this regard; and, she did not credit the repayment to Nyambok's Cash-2-U

account. And upon consideration of appellant's work experience, her failure to return the security check to Nyambok in accordance with Cash-2-U standard procedure, the absence of a proper repayment record, the fact that the missing payment was not discovered that evening, and her behavior upon being confronted with the discrepancies, we cannot say that no reasonable trier of fact could find that appellant intentionally diverted Nyambok's May 3, 2004 repayment to her own purposes.

Thus, on the charge of misdemeanor embezzlement arising out of these facts, we hold the trial court did not err in finding the evidence sufficient as a matter of law.

### B.  INDICTMENT 3177

Appellant was charged with felonious embezzlement "on or about February 27, 2004," with reference to a loan repayment received from Gertie Battle. Sometime in 2004, Blankowski discovered that a disbursement check had been manually written to Battle for $300, dated March 15, 2004 and posted on March 19, 2004. The check had originally been handwritten for $345, which is the typical payoff amount for a $300 loan, but the digits "00" had been handwritten in a heavier print over the "45." Above the changes was the handwritten notation "I.F.," which Blankowski testified that he recognized as "Iris Franklin" from his previous observations of appellant's handwriting. The signature line read Iris Franklin, and Blankowski testified that the signature was appellant's. The check was endorsed by Battle, and had been cashed at her bank.

Cash-2-U records show that Battle was the borrower on a February 17, 2004 loan of $300, and another $300 loan on March 15, 2004. Each loan contract was initialed "I.F." on the "company representative" line. Although Blankowski testified that he had instructed appellant "numerous times" to sign rather than initial loan contracts, he recognized the initials as appellant's handwriting.

- 10 -

Battle corroborated the record evidence that she borrowed $300 on February 17, 2004 and March 15, 2004. Although unsure of exact dates, she testified that on the day she received the handwritten March 15 disbursement check appellant told her that it was manually handwritten because the cash drawer had already been "closed out."

The statements of the only two Commonwealth witnesses who testified concerning the February 17, 2004 loan and the March 15, 2004 loans seemed to be contradictory. Blankowski testified that "the loan dated [February 17, 2004] was paid in full on April 8, 2004," but the March 15, 2004 loan was never repaid in full or otherwise. Battle testified unequivocally that she repaid both the February and the March loans in cash to appellant. Later, Blankowski testified that there was no "record of a disbursement for [the March 15, 2004] loan," and again that there was no record of repayment. Battle testified that she received both the February 17 loan and the March 15 loan disbursement checks. Finally, Blankowski testified that Battle "came in on March 15 to get a loan [while] she still had an outstanding loan from February 17 that wasn't paid off," while Battle testified that she had never borrowed from Cash-2-U while another payday loan was outstanding. Cash-2-U records contained a copy of a loan contract initialed by appellant showing that Battle borrowed $300 on March 15, 2004, while her February 17, 2004 loan was still apparently outstanding, and Blankowski so testified as well.

On appeal, the Commonwealth hypothesizes that Battle repaid her February 17, 2004 loan sometime before March 15, 2004, but appellant did not credit the money she received to Battle's account. Instead, she appropriated the funds to her own purposes. Subsequently, on March 15, 2004, when Battle sought another $300 loan, appellant was forced to write the disbursement check manually, since the computer would not print a disbursement check for a borrower with an outstanding loan. On April 8, 2004, when Battle repaid what she believed was

the March 15 loan, that amount was actually applied to the February 17 loan, leaving the March 15, 2004 loan outstanding.[2]

Appellant contends that this theory of guilt fails because the evidence shows the missing repayment funds were intended to repay the February 17 loan that was, in fact, discharged on April 8, 2004. We disagree. Although the trial court made no specific statement of the theory on which conviction rested, it resolved the apparent contradictions in the evidence. Whether or not the repayment on April 8, 2004 was applied to the February 17 loan or the March 15 loan is not relevant to appellant's guilt, since the payment alleged to have been embezzled under this indictment is the payment made to appellant prior to disbursement of the March 15 loan, "on or about February 27, 2004." On the evidence, appellant never applied that payment to either of Battle's debts.

Taken in a light most favorable to the Commonwealth, the evidence demonstrates that Battle entrusted appellant with funds to repay two loans in their entirety and that she discharged only one loan. A trier of fact could reasonably determine that appellant's explanation to Battle concerning the handwritten disbursement check was merely a contrivance to conceal her earlier fraud. We cannot say that no rational trier of fact could conclude from her conduct, as well as the absence of a proper record, the fact that the discrepancies were not discovered until well after they would have been typically, the similarity of this occurrence to other failed repayments, and

---

[2] The Commonwealth did not appear to advance exactly the same theory of guilt at trial as it does on appeal, as there was some confusion in the lower court as to whether testimony showed the missing funds Battle entrusted to appellant were applied to the February 17 loan or the March 15 loan. Appellant implies in her brief that the procedural bar set forth in Rule 5A:18 should therefore operate to preclude the Commonwealth's appellate argument. However, Rule 5A:18 applies only to rulings of the trial court offered on appeal as a basis for reversal, Cross v. Commonwealth, 49 Va. App. 484, 494, 642 S.E.2d 763, 768 (2007), and we are aware of no authority to prevent an appellee from raising a previously unexpressed theory of guilt on which the trial court may have relied, see Kelly, 41 Va. App. at 257, 584 S.E.2d at 447 (recognizing that our inquiry is what a "rational trier of fact" could have found based on the evidence presented). This argument is therefore without merit.

appellant's behavior upon confrontation, that appellant intentionally diverted the missing funds to her own purposes. Thus, we hold the trial court did not err in finding the evidence of this charge of felony embezzlement sufficient as a matter of law.

## C. INDICTMENT 3178

Around March 31, 2004, Cheryl Williams took a $150 payday loan and left a $172.50 security check with Cash-2-U. Although unsure of the date, Williams testified that later that month she made a $172.50 cash repayment to appellant with the intention fully to discharge the loan. Rather than returning her security check and contract at the time of repayment, appellant told Williams that her security check would be mailed to her. Williams left the store without a receipt, but returned days later when she discovered that money had been drawn from her account to cover the security check and that she had therefore repaid the same loan twice. Cash-2-U returned $172.50 to Williams, since, according to Blankowski, she "already paid." Blankowski testified that Cash-2-U never received repayment for this loan.

Appellant was convicted for misdemeanor embezzlement. As with Nyambok, appellant asserts that Williams's lack of certainty about the date of her loan renders the rest of her testimony unreliable as a matter of law. Again, we disagree.

Appellant also seems to argue, however, that Blankowski's reimbursement to Williams insulates her from conviction because the reimbursement solely on Williams's word somehow demonstrates Cash-2-U's "substandard record keeping" was the explanation for these discrepancies. This argument is based on a factual determination not made by the trial court that Cash-2-U's record keeping was substandard, and would thus seem to fail at its inception. But even if we were to grant appellant's assertion that Cash-2-U's business records were unreliable for purposes of this repayment, that fact would not diminish the probative value of Williams's direct testimony and the fact finder's permissible reliance thereon. Her testimony showed that

- 13 -

she entrusted $172.50 in cash to appellant while another $172.50 had already been entrusted to Cash-2-U in the form of her security check. All parties agree the security check should have been returned to Williams once her cash repayment was tendered, since a security check was to be cashed only if a payday loan is not discharged by repayment. Williams testified instead that her security check was not returned, but was cashed by Cash-2-U to cover a debt she had already paid to the appellant. The trier of fact could reasonably determine from this evidence that appellant failed to credit the $172.50 repayment to William's account. And in light of appellant's work experience and other similar discrepancies, the failure to reconcile the missing funds at the time the store closed, and appellant's behavior upon confrontation, a reasonable trier of fact could conclude solely from testimonial evidence that appellant failed to do so intentionally. We therefore hold that the trial court did not err in finding the evidence of this misdemeanor embezzlement charge sufficient as a matter of law.

## D. INDICTMENT 3179

Blankowski testified that Cash-2-U's records showed that on March 31, 2004, Carrie Cicuto contracted with appellant at Cash-2-U to borrow $450. She testified that she had taken a payday loan on one other occasion as well. On direct examination, the following colloquy occurred:

> [Prosecutor]: Do you remember the amount of the loan that you took out [on March 31, 2004]?
>
> [Cicuto]: Three-something.
>
> [Prosecutor]: Could it have been $450?
>
> [Cicuto]: It might have been.

Cicuto testified that she repaid the full payoff amount of $517.50 either in cash or with a check for $517.50 and that she received in return her security check and a receipt. However, Blankowski testified that Cash-2-U's records indicated that on April 26, 2004, Cicuto made only

a $300 partial repayment. The computer record for that payment referenced appellant's computer password, indicating to Blankowski that she was the CSR who took repayment.

On cross-examination, the following colloquy occurred:

> [Appellant]: At first you said you thought the loan was for about $300. And then [you said it could be $450]. So which is it, $300 or $450?
>
> [Cicuto]: [] I can tell you that I don't know the specific amount.
>
> [Appellant]: Is it possible it was $300?
>
> [Cicuto]: Sure, it's possible.
>
> [Appellant]: And you remember paying with a check, not cash?
>
> [Cicuto]: Yes.
>
> [Appellant]: And you did receive a receipt?
>
> [Cicuto]: Yes.
>
> [Appellant]: And the person that you paid [] was?
>
> [Cicuto]: [indicating appellant].

Under further cross-examination, Cicuto testified that she was not "a hundred percent certain" that she had dealt with appellant and that it was possible that she had dealt with a different CSR.

Appellant argues that there is insufficient evidence to support the Commonwealth's theory that appellant took Cicuto's repayment of $517.50, credited $300 to Cicuto's account, and diverted the remaining $217.50 to her own purposes. Appellant contends that Cicuto's recollections concerning the March 31, 2004 loan cannot have proven to the fact finder beyond a reasonable doubt the amount of the loan, the repayment amount, or the identity of the CSR who took repayment. However, Cicuto's testimony is not the sole evidence in this case. Blankowski testified, based on Cash-2-U records, that Cicuto took out a $450 loan on March 31, 2004, for which the repayment amount was $517.50. This argument is therefore without merit.

Blankowski's testimony shows further that $300 was credited to Cicuto's Cash-2-U account on April 26, 2004, whereas Cicuto testified unequivocally that she gave appellant the full repayment amount. As in the case of Battle's loan, their contradictory testimony can be resolved by concluding that appellant failed to apply the remaining $217.50 to Cicuto's debt. Based on our review of the evidence in a light most favorable to the Commonwealth, we cannot say a rational trier of fact could not so have found. We hold therefore that the trial court did not err in finding the evidence of this felony embezzlement charge sufficient as a matter of law.

## IV. CONCLUSION

Having found that there was sufficient evidentiary support for every necessary element of each offense for which appellant was convicted, we affirm appellant's convictions.

<u>Affirmed.</u>