COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Beales, Fulton and Lorish
Argued at Fredericksburg, Virginia

TANES OMAR TORRES ROMERO

MEMORANDUM OPINION[*] BY
v.      Record No. 0847-22-4          JUDGE RANDOLPH A. BEALES
JUNE 13, 2023

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
James A. Willett, Judge

Fernando Villarroel (The Irving Law Firm, P.C., on brief), for
appellant.

Jason A. Faw, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.

Following a jury trial, Tanes Omar Torres Romero was convicted of raping a child under the

age of 13, in violation of Code § 18.2-61. On appeal, Torres Romero contends that the trial court

abused its discretion by denying his motion to strike a prospective juror for cause and by admitting

certain evidence at trial over his objections.

## I. BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, [as] the prevailing party at trial." *Scott v.*

*Commonwealth*, 292 Va. 380, 381 (2016). On April 19, 2019, Torres Romero was living in

Woodbridge with his girlfriend, M.M.,[1] and M.M.'s five minor children, including her

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413.

[1] We use initials to refer to the child (and to members of the child's family) in order to
better protect the privacy of the child (and members of her family).

eleven-year-old daughter, C.F. Late that night, Torres Romero lay on the living room couch to watch a movie with C.F. and a couple of C.F.'s siblings. Eventually, C.F. and one of C.F.'s sisters fell asleep on the couch. Later that night, C.F awoke and saw Torres Romero standing in the kitchen. C.F. testified that "he came back to the couch," "scooched over to me," "took off his pants like halfway and kind of took mine off halfway as well," and then "put his penis in my vagina."

Once Torres Romero was finished, he went upstairs and left C.F. on the living room couch. C.F. testified that she was terrified and crying and that she went to the bathroom, used toilet paper to wipe her genitals, and noticed "white, greenish stuff down there." While in the bathroom, C.F. called out for her sister, who came to her aid. C.F. told her sister what Torres Romero had done. The girls then went upstairs together to tell their oldest sister, D.F., what Torres Romero had done to her. D.F testified that C.F. was "panicking, crying, saying she was in pain, shaking," and pointing to her vaginal area. While speaking with her younger sisters, D.F. began banging on her mother's bedroom door. After listening to her daughters, C.F.'s mother confronted Torres Romero and called 911. Torres Romero left the house before the authorities arrived.

C.F. was transported to a hospital in Fairfax where Mary Lam-Williams, a forensic nurse, examined C.F. Nurse Lam-Williams collected a urine sample from C.F. and also collected the clothing (including underwear) that C.F. was wearing. She also swabbed several areas of C.F.'s body, including her upper thigh, "the creases between the leg and the genital area, and the outside of her genital area." She noted, however, that she did not take samples from C.F.'s perianal/buttocks region. After she took the samples, Nurse Lam-Williams testified that she placed the swabs into a physical evidence recovery kit ("PERK") for testing.

Paula Clifton, an expert in forensic biology and DNA analysis, conducted DNA analyses of the samples in the PERK and of a buccal swab taken from Torres Romero.[2]  Included among the samples Clifton tested was a sample taken from the perianal/buttocks area.  Clifton testified that she "developed a [DNA] profile from the perianal/buttocks sample."  However, she emphasized that "it was of no value because it did not have enough information in it to be used for comparison purposes."  Additional testing revealed no spermatozoa, seminal fluid, or blood in the perianal/buttocks sample or in the "thighs/external genitalia sample."  However, Clifton did discover a limited quantity of male DNA in a sample taken from C.F.'s underwear, which led her to recommend performing a Y-STR test (a DNA analysis of the Y chromosome).

Kelly Loynes, an expert in forensic biology and DNA analysis, conducted the Y-STR analysis on the samples taken from C.F.'s inner thigh/genitalia and her underwear.  Loynes testified that she found male DNA on both samples.  Furthermore, she noted that the amount of male DNA on the internal underwear panel was significantly higher than samples she typically tests and that it was "higher than I would expect from a simple handling of that type of item."  Loynes also testified that Torres Romero could not be eliminated as a major contributor to that Y-chromosome DNA mixture profile.

During *voir dire* of the venire before the jury trial, the trial court asked the prospective jurors several questions.  Their responses indicated that they had no personal interest in the trial, that they had obtained no information about the alleged offense, that they had not expressed any opinion about Torres Romero's guilt or innocence, and that they were unaware of any biases or prejudices.  All of the prospective jurors also indicated that they understood that Torres Romero was presumed

---

[2] A few days after the incident Torres Romero was arrested, and a buccal swab was taken for testing.

innocent, that he did not have to produce any evidence, and that the Commonwealth had to prove his guilt beyond a reasonable doubt.

The prosecutor inquired if the prospective jurors understood that they must be impartial and fair to both sides. They answered affirmatively. Next, the prosecutor informed the prospective jurors about the nature of the charges and asked if any of the prospective jurors had been a victim of sexual assault or if a close family member had been sexually assaulted. Juror 23[3] indicated that both she and a good friend had previously been victims of a sexual assault many years earlier. When asked whether her experience "would impact [her] ability to listen to this case fair and impartially," she responded, "No." She further affirmed that she would be able to form an opinion in Torres Romero's case based solely upon the evidence presented at trial. Torres Romero's attorney asked, "Could it possibly affect your ability to be impartial when you hear the evidence and it could perhaps bring up some past experiences?" Juror 23 responded, "Maybe, yeah. I can't tell. Possibly." However, after the trial judge explained to her the role of a juror in deciding the case and asked her if her experience would compromise her ability to be impartial in deciding the case, Juror 23 affirmed that she could indeed be impartial. Consequently, the trial court denied Torres Romero's motion to strike Juror 23 for cause.

During trial, C.F. testified as to how Torres Romero's sexual advances toward her had begun shortly before his rape of her on the night of April 19, 2019. The first time Torres Romero initiated sexual contact with her was while they were "play fighting." C.F. testified that Torres Romero had used his hands to touch her vagina. Another instance of sexual contact occurred while Torres Romero was with C.F. in C.F.'s mother's bedroom. C.F. testified that she was fully clothed and facing away from Torres Romero when he pulled her pants and underwear down and inserted his penis into her vagina. C.F. also testified about a time when she and Torres Romero

---

[3] We use the relevant juror's assigned juror number to better protect her privacy.

were in the kitchen together, and he again touched her vagina with his hands. The trial court overruled Torres Romero's objections to this testimony and, instead, gave the jury an instruction limiting the jury from considering the bad acts evidence for propensity purposes.

After considering all of the evidence, the jury ultimately found Torres Romero guilty of raping eleven-year-old C.F. Torres Romero now appeals to this Court.

## II. ANALYSIS

### A. Motion to Strike a Prospective Juror

In Torres Romero's first assignment of error, he contends that "[t]he trial court erred when it improperly denied Petitioner's motion to strike juror [23] for cause as there was a reasonable ground to believe she could not render a fair and impartial verdict based on her responses to *voir dire* questioning." On appeal, this Court generally gives deference to the trial court's decision whether to strike a potential juror for cause. *See Lovos-Rivas v. Commonwealth*, 58 Va. App. 55, 61 (2011); *Cressell v. Commonwealth*, 32 Va. App. 744, 755 (2000). We do so because "a trial judge who personally observes a juror, including the juror's tenor, tone, and general demeanor, is in a better position than an appellate court to determine whether a particular juror should be stricken." *Teleguz v. Commonwealth*, 273 Va. 458, 475 (2007). "Consequently, unless 'manifest error appears in the record,' the trial court's decision will not be disturbed." *Juniper v. Commonwealth*, 271 Va. 362, 401 (2006) (quoting *Pope v. Commonwealth*, 234 Va. 114, 124 (1987), *cert. denied*, 485 U.S. 1015 (1988)). Furthermore, "[i]n reviewing whether a potential juror should have been removed from the venire, we consider 'the prospective juror's entire *voir dire*, not just isolated portions.'" *Id.* (quoting *Jackson v. Commonwealth*, 267 Va. 178, 191 (2004)).

Here, all of the prospective jurors indicated that they had no personal interest in the outcome of the trial, that they had not obtained any information about the alleged offense from outside sources, that they had no opinion about Torres Romero's guilt or innocence, and that they had no

awareness of any biases or prejudices against Torres Romero. Juror 23 also repeatedly informed the trial court that, despite her past history with sexual assault, she could listen to the evidence presented and weigh the evidence fairly and impartially. Although she briefly indicated that her past experiences could *possibly* affect her, this statement was an outlier when viewed in context of the entire *voir dire*. Furthermore, following her very brief exchange with defense counsel, she reassured the trial court that her past experiences would *not* compromise her ability to fairly and impartially decide this case based on the evidence. Consequently, the trial court did not commit manifest error by denying Torres Romero's motion to strike Juror 23 for cause.

## B. Prior Bad Acts

In his second assignment of error, Torres Romero contends that "[t]he trial court erred when it improperly allowed the Commonwealth to introduce evidence of prior bad acts of the Petitioner over defense counsel's renewed objection at trial." "[W]e review a trial court's decision to admit or exclude evidence using an abuse of discretion standard and, on appeal, will not disturb a trial court's decision to admit evidence absent a finding of abuse of that discretion." *Kenner v. Commonwealth*, 299 Va. 414, 423 (2021) (alteration in original) (quoting *Avent v. Commonwealth*, 279 Va. 175, 197 (2010)).

Although generally inadmissible as propensity evidence, the trial court may admit evidence of prior bad acts that "tends to prove any relevant fact pertaining to the offense charged, such as where it is relevant to show motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, accident, or if they are part of a common scheme or plan." Va. R. Evid. 2:404(b). It is also well established that prior bad acts evidence is admissible "when it 'shows the conduct or attitude of the accused toward his victim[,] establishes the relationship between the parties,'" *Kenner*, 299 Va. at 424 (quoting *Ortiz v. Commonwealth*, 276 Va. 705, 714 (2008)), or if "the evidence is connected with or leads up to the offense for

which the accused is on trial," *Woodfin v. Commonwealth*, 236 Va. 89, 95 (1988) (citation omitted). Indeed, the Supreme Court regularly permits the "introduction of evidence of prior sexual offenses committed by the accused against the same victim" because such evidence shows "the conduct or attitude of the defendant toward [the victim], indicate[s] the ongoing nature of their relationship, and negate[s] the possibility that the defendant's touching of [the victim] was accidental or for a purpose misunderstood by [the victim]." *Moore v. Commonwealth*, 222 Va. 72, 76-77 (1981).

Here, C.F.'s testimony that Torres Romero touched her sexually on at least three separate occasions before April 19, 2019, certainly constitutes evidence of the relationship Torres Romero had with C.F. and of Torres Romero's conduct and attitude toward C.F. *See id.* Specifically, Torres Romero's repeated sexual advances toward C.F., his girlfriend's eleven-year-old daughter, show that he sexually desired C.F. *See id.* (permitting the introduction of evidence of prior bad acts by the accused against the same victim for purposes of showing "the ongoing nature of their relationship" and for "negat[ing] the possibility that the defendant's touching of [the victim] was accidental"). Furthermore, C.F.'s testimony also shows that she did *not* misunderstand what was happening to her on April 19, 2019, because Torres Romero had touched her vagina before when they were "play fighting" and had even inserted his penis in her vagina at least once before when they were in a bedroom of the home. *See id.* Consequently, C.F.'s testimony concerning Torres Romero's prior sexual acts committed against her has legitimate probative value. *See* Va. R. Evid. 2:404(b).

In addition, the legitimate probative value of the evidence must exceed the incidental prejudice to Torres Romero. *See id.*; *Spencer v. Commonwealth*, 240 Va. 78, 90 (1990) ("Whenever the legitimate probative value outweighs the incidental prejudice to the accused, evidence of prior offenses, if otherwise competent, is admissible." (quoting *Lewis v.*

*Commonwealth*, 225 Va. 497, 502 (1983))). "The responsibility for balancing the competing considerations of probative value and prejudice rests in the sound discretion of the trial court." *Id.*

The probative value of Torres Romero's prior sexual advances toward C.F. simply outweighs any incidental prejudice that might arise. This evidence permitted the jurors to make the legitimate inference that Torres Romero had a sexual desire for the eleven-year-old C.F. and that C.F. was not at all confused about what Torres Romero did to her on the night of April 19, 2019. Furthermore, there is no indication that the evidence inflamed the jurors to such an extent that they acted irrationally. *Cf. Thomas v. Commonwealth*, 44 Va. App. 741, 758 ("Virginia law, however, intervenes only when the alleged prejudice tends to inflame irrational emotions or leads to illegitimate inferences."), *adopted upon reh'g en banc*, 45 Va. App. 811 (2005). In addition, the trial court gave the jury an instruction limiting the jury from considering any evidence of prior bad acts for propensity purposes. The jury is "presumed to follow prompt, explicit, and curative instructions." *Beavers v. Commonwealth*, 245 Va. 268, 280 (1993). Consequently, we cannot say that the trial court abused its discretion in admitting evidence of Torres Romero's inappropriate sexual advancements toward C.F. prior to his rape of C.F. on April 19, 2019.

### C. Certificate of Analysis

In his third assignment of error, Torres Romero contends that "[t]he trial court erred when it improperly admitted the Certificate of Analysis despite objections as to whether the Commonwealth laid the proper foundation for admissibility." He emphasizes that no one identified who took the perianal/buttocks sample and argues that this renders the certificate of analysis inadmissible because the Commonwealth did not lay a proper foundation.

The "[d]ecisions regarding the admissibility of evidence 'lie within the trial court's sound discretion and will not be disturbed on appeal absent an abuse of discretion.'" *Michels v.*

*Commonwealth*, 47 Va. App. 461, 465 (2006) (quoting *Breeden v. Commonwealth*, 43 Va. App. 169, 184 (2004)). "[W]e do not review such decisions *de novo*." *Thomas*, 44 Va. App. at 753. Rather, upon review on appeal, it is "[o]nly when reasonable jurists could not differ can we say an abuse of discretion has occurred." *Tynes v. Commonwealth*, 49 Va. App. 17, 21 (2006) (quoting *Thomas*, 44 Va. App. at 753). Furthermore, "under Code § 8.01-678, a harmless error review is required in all cases, unless otherwise provided by another statute." *Commonwealth v. Kilpatrick*, __ Va. __, __ (Aug. 4, 2022) (citing *Commonwealth v. White*, 293 Va. 411, 420 (2017)).

Assuming without deciding that the trial court erred in admitting this evidence, such error was harmless. An analysis of the perianal/buttocks sample *only* appeared on one of the two certificates of analysis admitted at trial—specifically Exhibit 4. Paula Clifton, the forensic scientist who prepared Exhibit 4, testified that the perianal/buttocks sample "was of no value because it did not have enough information in it to be used for comparison purposes." Thus, the perianal/buttocks sample contained no incriminating evidence linking Torres Romero to the crime.[4] Consequently, any potential chain of custody problem with Exhibit 4 is harmless in this case because the test of the perianal/buttocks sample in Exhibit 4 (and the other tests contained in that exhibit) did not provide any incriminating evidence against Torres Romero. Therefore, even assuming without deciding that it was error to admit Exhibit 4, such error was harmless. Consequently, we do not disturb the trial court's judgment.

---

[4] Furthermore, none of the other sample analyses reported in Exhibit 4 implicated Torres Romero in the crime. Indeed, only Exhibit 5 (the certificate of analysis reflecting the results of the Y-STR test) implicated Torres Romero. Kelly Loynes, the forensic scientist who performed the Y-STR test, tested samples taken from C.F.'s underwear. These underwear samples, for which the testimony of Nurse Mary Lam-Williams had laid a proper foundation, showed that male DNA was present on C.F.'s underwear and that Torres Romero could not be eliminated as a contributor of the DNA. Furthermore, unlike Exhibit 4, Exhibit 5 (which does implicate Torres Romero) does not contain any information in it about the perianal/buttocks swab.

## III. CONCLUSION

We hold that the trial court did not abuse its discretion when it denied Torres Romero's motion to strike Juror 23 and when it allowed C.F. to testify about Torres Romero's prior sexual assaults against C.F. Furthermore, we hold that, even assuming without deciding that the trial court erred in admitting Exhibit 4 (the certificate of analysis that includes the perianal/buttocks sample), such error was harmless. Consequently, we affirm the trial court's conviction of Torres Romero for rape.[5]

*Affirmed and remanded.*

_____

[5] While we affirm Torres Romero's conviction for rape, the "Sentence Summary" in Torres Romero's sentencing order contains a scrivener's error. The trial court sentenced Torres Romero to thirty years of incarceration with fifteen years suspended—not, as the "Sentence Summary" reflects, to thirty years of incarceration with "Fifty (15) Years" suspended. Consequently, we remand the case to the circuit court for the limited purpose of correcting this scrivener's error in the "Sentence Summary" of the trial court's April 27, 2022 final order, pursuant to Code § 8.01-428(B).